. Bailey *vs.* Mogg.

Prior to the act repealing all former statutes prohibiting unlicensed physicians from recovering a compensation for their services, (*Stat.* 1844, *p.* 406,) an unlicensed physician could not maintain an action for medicines and medical attendance, though he used only vegetable remedies of domestic origin.

And since that act, such an action will not lie on a demand for services rendered before its passage.

Error to the Onondaga common pleas. Bailey sued Mogg in a justice's court and recovered judgment, which was reversed by the common pleas on *certiorari;* and this writ of error is brought to review the last mentioned judgment. The question is sufficiently stated in the opinion of the court.

*S. C. Parker*, for the plaintiff in error.

*Le Roy Morgan*, for the defendant in error.

*By the Court*, Beardsley, J. This action was brought in 1845, to recover a compensation for medical attendance and medicines furnished and administered by the plaintiff, as a *botanic* physician in 1840. The plaintiff was not licensed to practice medicine, and the only question is, whether such an action could be sustained.

Since the passage of the act of 1844, quackery may certainly boast its triumphant and complete establishment by law. But notwithstanding this, a brief retrospect of the course of legislation on this subject, may not only be useful, but is to some extent necessary in deciding the case now before us.

About fifty years since the legislature undertook " to regulate the practice of physic and surgery in this state," and made it penal to do either without being duly licensed for the purpose. (3 *Greenleaf*, 417.) To the like effect was the subsequent act of 1801. (1 *K. & R.* 449.) These statutes did not, in terms, declare that no compensation should be recovered by an unlicensed practitioner, but they did what was equivalent to such

an enactment, for they subjected him to a penalty for the unauthorized and illegal act. But a statute passed in 1806, expressly declared that any person who should commence practice after the first day of September then next, without being duly licensed, should "forever thereafter be disqualified from collecting any debt or debts incurred by such practice." (4 *Web.* 538, § 7.) The revised laws of 1813 contained a similar provision, (2 *R. .L.* 222, § 12,) as did the revised statutes of 1830. (1 *vol.* 455, § 22.) This section of the revised statutes also made the unauthorized practice of physic and surgery, "a misdemeanor, punishable by fine or imprisonment, or both." This was a short-lived clause, for it was repealed by the act of April, 1830, which made the offence penal, not criminal, and which also declared that such penal provisions should "not be deemed and taken to extend to or debar any person from using or applying, for the benefit of any sick person, any roots, barks, or herbs, the growth or produce of the United States." (*Laws of* 1830, *p.* 141.) This statute was interesting in more than one respect. Quackery ceased to be a crime, and if confined to the use of domestic roots, barks and herbs, it was not even a penal offence. Much had thus been gained, although a complete triumph was not achieved. The empiric, although still unable to compel payment for domestic roots, barks and herbs, when administered, had only to exact payment in advance, and he stood on safe ground. But this limited indulgence to ignorance and imposture called for redress, and it was attempted to be given by the act of 1834, which provided that the exemption from the penal provisions of the act of 1830 should be confined to such persons as should, *without fee or reward,* use or apply roots, barks or herbs, the growth or produce of the United States. (*Laws of* 1834, *p.* 72.) The next legislature held this remedy to be worse than the disease, and the act of 1834 was blotted out in 1835. (*Laws of* 1835, *p.* 354.) Thus the law on this subject was thrown back to the revised laws, and the act of April 7, 1830, both which remained in force until 1844, when the legislature swept away all criminal and penal laws against the unlicensed practice of physic and surgery, and

every enactment which prohibited any person from recovering a compensation for services as a physician or surgeon, whether licensed or not. (*Laws of* 1844, *p.* 406.)

The triumph was now complete, for the legislature had made every man a doctor, and nostrums of every description and admixture could now be safely prescribed, and payment therefore exacted by authority of law. This is still the state of the law on this subject, for I believe it has undergone no change since the act of 1844 was passed. But such was not the law in 1840, when the services in question in this case were rendered. The act of April, 1830, and the first clause of the twenty-second section of the revised statutes already referred to, were then in force. These provisions are consistent with each other. One of them, the revised statutes, declares that " every person not authorized by law, who for any fee or reward, shall practice physic or surgery, within this state, shall be incapable of recovering by suit any debt arising from such practice." And this was not changed by the act of April, 1830, which while it subjected unlicensed practitioners to the payment of penalties, exempted from such penal provisions those who used or applied " for the benefit of any sick person, any roots, barks or herbs, the growth or produce of the United States."

The plaintiff was a botanic physician, and it may be fair to hold upon this return, that he used only vegetable remedies of domestic origin. He was then not subject to any penalty for prescribing and administering them. But while the revised statutes were in force he could not compel payment for his services as an unlicensed physician, whatever remedies might have been prescribed and administered. Such was the law in 1840, when the services were rendered ; and as to his case it was the same in 1845, when the cause was tried. The repeal of the previous prohibitory laws by the act of 1844, had no effect upon cases which arose before that act was passed.

The justice erred, and the judgment of the common pleas was correct.

Judgment affirmed.