JOSEPH N. WHITE, Respondent, v. DAVIS L. CARROLL, Appellant.

The defendant, in an action for libel and slander, claimed that the words were privileged, having been used by him in the course of his testimony as a witness in a regular judicial proceeding. On the trial, the judge instructed the jury that, if they found the defendant believed his answers were pertinent and relevant to the question at issue when the words were uttered, their verdict should be for the defendant; if, on the other hand, they found that the defendant was actuated by malice, or knew that the words were not relevant, and availed himself of the opportunity to defame the plaintiff, the position of witness did not protect him; and submitted the question to the jury.—*Held*, a correct instruction, and that whether the defendant was protected, under the circumstances, is not a question of law, but was properly submitted to the jury.

(Argued January, 1870; decided March 18th, 1870.)

THIS is an appeal by the defendant from a judgment of the Supreme Court in the fourth district, in favor of the plaintiff, rendered on the verdict of a jury.

The action was for libel and slander, and was tried before Mr. Justice POTTER and a jury, at the Montgomery circuit, in May, 1861.

Both parties resided in Amsterdam, Montgomery county, and practiced as physicians, the plaintiff being of the homœopathic, and the defendant of the allopathic school of practice.

In a contest before the surrogate of the county of Montgomery, in respect to the mental capacity of one Jay Phillips, deceased, to make a will, the plaintiff was sworn as a witness on behalf of the contestants, and the defendant was subsequently sworn as a witness, on the same issue, on behalf of the executor. It appeared that the defendant had attended Mr. Phillips as his physician during his illness. The plaintiff, in giving his testimony before the surrogate, had sworn that he was a practicing homœopathic physician. On the examination of the defendant as a witness before the surrogate, he was asked by counsel for the contestant if any other physician was in attendance on Jay Phillips, at the time he was attending

him, and he answered, "not as I know of." He was then asked, "Did not any physician attend him at the time he was at Mrs. Moore's, when you did not?" To which he answered, "Not as I know of. I understand he had a quack; I would not call him a physician. I understood that Dr. White, as he is called, had been there." This evidence was reduced to writing by the surrogate, signed by the defendant, and filed in the surrogate's office, and thereupon this suit was commenced for damages on account of the libel, supposed to be involved in this testimony.

The plaintiff had received a diploma as a Doctor of Medicine from the Medical College of Ohio. He was educated under the allopathic system, and for a short time practiced in Ohio, and then came to Amsterdam, where he adopted the homœopathic practice, and pursued it for several years prior to the commencement of this suit.

The defendant claimed, that the alleged libelous words being the testimony of the defendant, as a witness before a competent court, were not actionable, but privileged.

The case was submitted to the jury to find, as a fact, whether at the time of giving his testimony, the defendant believed it to be pertinent to the issue before the surrogate; and if they so found the verdict should be for the defendant, and if not, but that the defendant was actuated by malice, then for the plaintiff. To this the defendant excepted, insisting that the question was one of law.

The jury rendered a verdict in favor of the plaintiff for $100.

The exceptions were ordered to be heard in the first instance at General Term, where judgment was ordered for the plaintiff on the verdict.

Judgment was perfected and the defendant appealed therefrom to this court.

*John H. Reynolds,* for the appellant, on the point that words spoken by a witness in a court of competent jurisdiction are privileged, cited 1 Starkie on Slander (by Wend.)

240, 242, 254, 315; *Revis* v. *Smith* (36 Eng. Law and Eq., 268); *Perkins* v. *Mitchell* (31 Barb., 461, 469, 473).

*Rufus W. Peckham, Jr.*, for the respondent, that the words were actionable *per se*, cited *Garr* v. *Sheldon* (6 Barb., 416); *Foot* v. *Brown* (8 John., 64); *James* v. *Powell* (1 Mod., 272); 6 Jac. Law D., 99; 3 Black. Coms., 123; Burr. Law D., part 2, 936; 3 Steph. Com., 473; *Cheese* v. *Scales* (10 Mees. & W., 488). That the question of malice should be submitted to the jury, though the words might be privileged, if not spoken maliciously, he cited *Liddie* v. *Hodge* (2 Bosw., 537, 543, 545, and cases cited at page 537); *Garr* v. *Sheldon, supra;* *Hopkins* v. *Smith* (3 Barb., 599).

SUTHERLAND, J. The legislation of this State, from and including the act of the 23d of March, 1797 (3 Greenleaf, 427), to the act of May 6th, 1844 (Laws of 1844, page 406), had so far and continuously recognized and regulated the practice of the allopathic system or school of medicine (and which may still be called the old and perhaps the ordinary system or school of medicine) as the only legal system or school of medicine, that I question whether any physician, or person calling himself, or called by others, a physician, not licensed as an allopathic physician, could, previous to the act of 1844, have maintained an action against any one for calling him a quack.

For the statutes concerning the practice of physic and surgery in this State, prior to the act of 1844, in addition to the act of 1787, see the act of 1801; 1 K. & R., 449; the act of 1806, 4 Webst., 538; 2 Rev. Laws of 1813, page 218; 1 Rev. Statutes, 451 to 456; act of April 7, 1830; Laws of 1830, page 141; act of April 5th, 1834; Laws of 1834, page 72; act of May 11th 1835; Laws of 1835, page 354. See, also, *March* v. *Davison* (9 Paige, 585, 586); *Bailey* v. *Mogg* (4 Denio, 60).

Since the passage of the act of 1844, I do not think that it can be said that the laws of this State recognize any par-

ticular school or system of medicine as the legal or authorized school or system; for that act, in effect, abolished all previous statutory regulations and restrictions concerning the practice of medicine, and authorized any one, without any license, to practice physic and surgery, and to "prescribe for or administer medicines or specifics, to or for the sick," and to recover for his or her services, at the peril of being sued for malpractice, and if convicted of gross ignorance, malpractice or immoral conduct, of being punished therefor by fine or imprisonment, or both, as a misdemeanor.

We cannot avoid taking judicial notice of the fact, that homœopathy, as a distinct system, or school of medicine, with its professors and physicians, medicines and formulas, treatises and schools of instruction, and with a fair share of intelligent persons for its patrons and patients, has existed in, and been diffused through this State, and in and through other States and countries, for some time past; and I do not see why, in this State, since the act of 1844, the allopathic, and the homœopathic physicians have not had, and have not now, equal and the like remedies for slanderous, or libellous attacks on their professional reputations, or characters. (See 4 E. D. Smith, 8, *Corse* v. *Maretzek*.)

In view of the act of 1844, pretentious ignorance of the system must be regarded as making the quack, and not the system.

To call a physician, whether homœopathic or allopathic, a quack, is in effect charging him with a want of the necessary knowledge and training to practice the system of medicine which he undertakes to practice, and which he holds himself out as having, by undertaking to practice; and I do not see why it is not now, and has not been, since the act of 1844, just as actionable, falsely and maliciously to call a homœopathic physician a quack, as to call an allopathic physician a quack.

There cannot be any doubt, I think, that to falsely and maliciously call either a quack is actionable, and has been since the act of 1844.

Opinion of the Court, per Sᴜᴛʜᴇʀʟᴀɴᴅ, J.

On the trial of this action, before Mr. Justice Pᴏᴛᴛᴇʀ and a jury at the circuit, it appeared, that in 1858 and 1859, a proceeding was going on before the surrogate of Montgomery county, in which the contested point or question was the testamentary capacity of one Jay Phillips; that the plaintiff and the defendant were both at the time, and for some years previously had been, practicing as physicians at Amsterdam, Montgomery county, the plaintiff as a homœopathic physician, and the defendant as an allopathic physician; that both had been sworn as witnesses, and testified in the proceedings before the surrogate, the defendant some time after the plaintiff; that on the examination of the defendant as such witness, he was asked whether any other physician was in attendance on Jay Phillips, at the time he was attending him, and that he answered: "Not as I know of." That he was then asked: "Did not any physician attend him, at the time he was at Mrs. Moore's, when you did not?" That to this question, the defendant answered: "Not as I know of; I understand he had a quack, I would not call him a physician; I understood that Dr. White, as he is called, had been there." That this evidence was reduced to writing by the surrogate, and filed in the surrogates' office; and thereupon this action was brought, the complaint in which contains two counts, one for libel, or for words written; and the other for slander, or for words spoken.

No point was made on the trial of the action, that the words alleged in the complaint had not been proved to have been spoken by the defendant, but a motion was made on his part to dismiss the complaint, substantially upon the ground that the words spoken by the defendant were not actionable, because they were spoken on his examination as a witness, and were spoken as pertinent and responsive to the questions asked him.

Justice Pᴏᴛᴛᴇʀ denied the motion to dismiss the complaint, and the defendant excepted.

In submitting to the jury the question, "whether the defendant, at the time he so testified and used the words in ques

tion, believed the words so used by him were relevant or pertinent to the question then on trial," Justice POTTER charged the jury as follows : "That if the jury believed, from all the circumstances proved, from the questions put to him, and from his manner of answering, and from the answers themselves, that he testified in good faith, or in the belief that his answers were pertinent and relevant, then the law protected him in what he said ; it was privileged, and their verdict should be for the defendant. That if, on the contrary, they should believe from this evidence, that the defendant, though testifying at the time as a witness, and as such entitled to the protection of the law, in so using the words proved, was actuated by malice; that he used the words for the mere purpose of defaming the plaintiff, then the law withdrew the protection it would otherwise have afforded him, and he became amenable to the consequences of uttering the slander, or of publishing the libel."

There is certainly some doubt whether the defendant's exception, which he claims applies to this part of the charge, was sufficiently specific or definite to raise the question as to its correctness; but I shall assume that it was; and I shall also assume, in view of what I have said preliminarily, as the counsel for the defendant assumed on the argument, and assumes in his points, that the only material questions presented by this appeal, are those presented by the two exceptions referred to.

Now, as to the first, it is perfectly clear, that the question, whether the defendant was protected under the circumstances, was not a question of law for the court, but was a question of fact for the jury. It was really a question of conduct, of motive, of good faith and honest purpose, or of bad faith and malicious purpose.

The question was, whether the defendant did, or did not, avail himself of the occasion to maliciously answer the questions put to him as a witness, in the way he did.

This question was most emphatically a question for the

jury; and, I think it was submitted to the jury as favorably for the defendant as he had a right to expect or ask.

It is true, that in submitting it to the jury, Justice POTTER assumed that the defendant, when he answered the questions as he did, knew what the question in the proceeding before the surrogate was; but Justice POTTER had a right to assume this under the circumstances.

I think the judgment should be affirmed with costs.

All concur for affirmance.

Judgment affirmed.