ANDREWS v. GARDINER.  (No. 6620.)

(Supreme Court, Appellate Division, First Department.  December 31, 1914.)

1. LIBEL AND SLANDER (§ 38*)—PRIVILEGE OF COUNSEL—EXTENT.

Absolute privilege of counsel in judicial or quasi judicial proceedings extends only to matters which may be or may become pertinent and to matter not so manifestly immaterial that under no circumstances could it be or become material.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 117–123; Dec. Dig. § 38.*]

2. LIBEL AND SLANDER (§ 123*)—PRIVILEGE OF COUNSEL—QUESTION OF LAW OR FACT.

On an issue as to whether a statement of counsel is privileged, the question whether defendant believed the matter was pertinent or relevant,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or, knowing that it was not relevant, availed himself of the opportunity to defame plaintiff, is a question of fact, while whether it was or was not pertinent to the issue or occasion is a question of law.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

3. LIBEL AND SLANDER (§ 38*)—STATEMENTS OF COUNSEL—PRIVILEGE.

Statements of counsel, so plainly irrelevant and impertinent that he could not reasonably have supposed them to be relevant, were not privileged.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 117–123; Dec. Dig. § 38.*]

4. LIBEL AND SLANDER (§ 101*)—PRIVILEGE—MATERIALITY—BURDEN OF PROOF.

Where, on an issue of privilege with reference to alleged libelous statements of counsel, the materiality of the matter does not appear on the face of the publication, the burden is on defendant to show its relevancy.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 150, 273, 275–280; Dec. Dig. § 101.*]

5. PARDON (§ 7*)—POWER OF GOVERNOR—EXERCISE—PETITION.

While the Governor's power to pardon is unrestricted by anything except his own conscience, it will not be presumed that he would be moved by any caprice; and hence a petition for pardon should contain only such facts and arguments as would tend to influence a man of sound mind and judgment.

[Ed. Note.—For other cases, see Pardon, Cent. Dig. §§ 8, 9; Dec. Dig. § 7.*]

6. LIBEL AND SLANDER (§ 123*)—PRIVILEGE—STATEMENTS OF COUNSEL—IMMATERIAL STATEMENTS.

Statements of defendant as counsel for a convicted physician, made part of an application to the Governor for a pardon and casting serious aspersions on the character and conduct of plaintiff, an attorney for a medical society which had furthered the physician's prosecution, were not privileged as a matter of law.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

7. LIBEL AND SLANDER (§ 123*)—MALICE—INTRINSIC EVIDENCE.

Where an attorney's statement in support of a convicted physician's application for a pardon contained serious aspersions on the character and conduct of plaintiff as attorney for a medical society furthering the prosecution, not material to the case and disproportionate to the facts, the writing itself possessed internal evidence of malice, entitling plaintiff to go to the jury on such issue, without extrinsic proof of malice.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

Appeal from Trial Term, New York County.

Action by Champe S. Andrews against Asa Bird Gardiner. From a judgment dismissing the complaint on the merits, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Champe S. Andrews, of New York City (Louis Sturcke, of New York City, on the brief), for appellant.

Mayer Kronacher, of New York City, for respondent.

HOTCHKISS, J.   The action is. for libel, and the material facts are as follows: A. Dr. Conrad was serving a sentence for attempted abor-

tion. Plaintiff, as counsel for the New York County Medical Society, had been instrumental in securing Conrad's conviction. In March, 1911, Conrad presented to the Governor of this state an application for pardon. The petition for pardon was signed by the defendant, who acted as Conrad's attorney. Appended to the petition was a separate communication, addressed to the Governor and signed by the defendant, in which it was stated that the petition for pardon "was prepared for me and receives my heartiest concurrence." The petition contained, among other matters, the following statements of and concerning the plaintiff:

(1) That the plaintiff, as counsel for the Medical Society in the prosecution of Dr. Conrad, was impelled by dishonorable motives and did not act in good faith towards the society; that he employed unfair means to effect Conrad's conviction; that he recklessly submitted to the Comitia Minora, or governing body of the society, genuine or forged communications, all anonymous, which he had received concerning Conrad; these plaintiff distorted and exaggerated, and urged action thereon by the Comitia, which he "dominated absolutely"; and that plaintiff maligned and slandered Conrad before the Comitia.

(2) That plaintiff, having been arraigned in a police court on a charge of extortion, had escaped conviction on a technicality.

(3) That the district attorney who conducted the trial of Conrad became convinced that plaintiff, for the purpose of extortion, was using the public prosecutor to make "cases" against alleged criminal practitioners of medicine.

(4) That the plaintiff was "frozen out of office" in the Order of Elks "for good and sufficient reason."

(5) That the "board" or medical society became convinced that the plaintiff was using his office as counsel to the society for purposes of personal gain, and that he was requested to resign as such counsel.

(6) That charges were filed against plaintiff before the Grievance Committee of the Association of the Bar.

(7) That plaintiff became or was thoroughly discredited in the community, and at the bar, and was an unprincipled, blackmailing, depraved scoundrel.

The only defense pleaded in the answer was privilege. The learned trial justice dismissed the complaint, on the ground that, as attorney for Conrad, defendant was protected by a qualified and not an absolute privilege, but that plaintiff must fail in his action because he offered no proof by evidence extrinsic to the petition itself that the defendant was actuated by express malice.

[1] I think the judgment of dismissal was wrong, and must be reversed. It is not necessary for us to decide whether an application to the executive for a pardon is within the class of judicial or quasi judicial proceedings to which the absolute privilege of counsel extends, or whether the occasion is one offering the protection of a qualified privilege only. For the purposes of this appeal, we may assume the privilege to be absolute, as was held in Connellee v. Blanton (Tex. Civ. App.) 163 S. W. 404. But it is well settled that the principle of absolute privilege of counsel extends only to matters which may be or may

become pertinent; also that if the matter, although libelous, is not so manifestly immaterial that under no circumstances could it be or become material, it is privileged. Youmans v. Smith, 153 N. Y. 214, 220, 47 N. E. 265, 267. As was said by Judge Vann, writing for the court in that case:

"If counsel, through an excess of zeal to serve their clients, or in order to gratify their own vindictive feelings, go beyond the bounds of reason and by main force bring into a lawsuit matters so obviously impertinent as to not admit of discussion, and so needlessly defamatory as to warrant the inference of express malice, they lose their privilege and must take the consequences. In other words, if the privilege is abused, protection is withdrawn."

[2] Whether the matter is or is not pertinent to the issue or occasion is a question of law. Sickles v. Kling, 60 App. Div. 515, 69 N. Y. Supp. 944. The question of fact is: Did the defendant believe the matter was pertinent and relevant, or did he know that it was not relevant, and did he avail himself of the opportunity to defame the plaintiff? White v. Carroll, 42 N. Y. 161, 1 Am. Rep. 503, explained Marsh v. Ellsworth, 50 N. Y. 309, 313.

[3, 4] If, however, the matter is so plainly·irrelevant and impertinent that the defendant could not reasonably have supposed it to be relevant, it is not privileged. Moore v. Mfg. Nat. Bank, 123 N. Y. 420, 25 N. E. 1048, 11 L. R. A. 753. See, also, Odgers on Libel and Slander (5th Eng. Ed.) 305. And if the materiality of the matter does not appear on the face of the publication, the burden is on the defendant to show its relevancy. Moore v. Mfg. Nat. Bank, supra.

[5] The power of the Governor of this state to grant pardons is unrestricted by anything save his own conscience. Const. art. 4, § 5. But, even so, it cannot be presumed that he would be moved by mere caprice or purely quixotic considerations. We may therefore assume that a petition invoking his favorable action should contain only such facts and arguments as would tend to influence a man of normal mind and judgment.

[6] On the record before us, it would seem that most, if not all, of the matter contained in the Conrad petition, and to which I have alluded as referring to this plaintiff, could not in reason be supposed to be matter tending to influence the Governor in the slightest degree, and prima facie that it was foreign to any legitimate purpose of the petition. So far as appears, the plaintiff was not a witness at any point in the proceedings resulting in Conrad's trial and conviction, and the only part he took therein was that of unofficial assistant or aid to the district attorney, in which capacity his activities were as far removed from anything bearing upon Conrad's guilt or innocence, or any other fact by which the executive might presumably be moved, as if he had been an entire stranger. It is difficult, also, to see how plaintiff's conduct or motive as counsel to the Medical Society, in proceedings before that body prior to the institution of criminal proceedings, could have in the least degree affected even the sympathy of the Governor, and assuredly plaintiff's private life, character, or professional standing at the bar, or the manner in which he may have conducted himself generally when acting as counsel for the Medical Society, was

as remote from anything which a normal mind could conceive to be material to an application for pardon as anything could well be.

The foregoing principles of privilege seem to suggest the true rule with respect to the question of whether, in order to recover in a case like the present, plaintiff must prove express malice by evidence extrinsic to the petition or publication. If the words complained of are in their nature libelous per se, if the question of materiality is a question of law, and, if, when materiality does not appear on the face of the publication, the burden is on defendant to show materiality, the necessary result would seem to be that a plaintiff in that situation has proven a prima facie case, and particularly would this be so where the language was so plainly irrelevant that defendant could not have supposed it to be otherwise.

[7] But the proposition that the publication may itself contain ample evidence of malice, doing away with the necessity for extrinsic proof thereof, seems to have ample support. I find no case in this state which directly decides the question, but the view I have suggested has the approval of the best text-writers and is abundantly supported by authority in other jurisdictions. Mr. Odgers says (5th Eng. Ed. 354):

"But the test appears to be this: Take the facts as they appeared to the defendant's mind at the time of publication; are the terms used such as the defendant might have honestly and bona fide employed under the circumstances? If so, the judge should stop the case. For if the defendant honestly believed the plaintiff's conduct to be such as he described it, the mere fact that he used strong words in so describing it is no evidence of malice to go to the jury. Spill v. Maule, L. R. 4 Ex. 232. But where the language used, though taken in connection with what was in defendant's mind at the time, is 'much too violent for the occasion and circumstances to which it is applied,' or 'utterly beyond and disproportionate to the facts,' or where improper motives are unnecessarily imputed, there is evidence of malice to go to the jury. Fryer v. Kinnersley, 15 C. B. N. S. 422; Gilpin v. Fowler, 9 Exch. 615. * * * So, if in writing or speaking on a privileged occasion, the defendant breaks out into irrelevant charges against the plaintiff, unconnected with the occasion whence the privilege is derived, the defamatory matter thus unnecessarily introduced is evidence of malice. Picton v. Jackman, 4 C. & P. 257; Senior v. Melland, 4 Jur. N. S. 1039."

The learned author, however, proceeds to say:

"But in other cases the tendency of the courts is not to submit the language of privileged communications to too strict a scrutiny. 'To hold all excess beyond the absolute exigency of the occasion to be evidence of malice would in effect greatly limit, if not altogether defeat, that protection which the law throws over privileged communications.' Per Sir Robert Collier, L. R. 4 P. C. 508. 'The particular expressions ought not to be too strictly scrutinized, provided the intention of the defendant was good.' Per Alderson, B., in Woodward v. Lander, 6 C. & P. 550. And see Taylor v. Hawkins, 16 Q. B. 308; Ruckley v. Kiernan, 7 Ir. C. L. R. 75; R. v. Perry, 15 Cox C. C. 169. That the expressions are angry is not enough; the jury must go further, and see that they are malicious. Per Tindal, C. J., in Shipley v. Todhunter, 7 C. & P. 690. 'A man may use excessive language, and yet have no malice in his mind.' Per Lord Esher, M. R., [1895] 2 Q. B. at p. 170."

In Clark v. Molyneux, 3 Q. B. Div. (1877–78) 237, a case in the Court of Appeal, Bramwell, L. J., said (page 245):

"It is sometimes difficult to determine when defamatory words in a letter may be considered as by themselves affording evidence of malice. It was

held in a case cited to us from the Exchequer Chamber [Spill v. Maule, supra] * * * that the expressions in the letter complained of could not be evidence of malice, and the question ought not to have been left to the jury; and on the other hand, authorities [Gilpin v. Fowler and Fryer v. Kinnersley, supra] have been cited in which the court thought the expressions in the letters of themselves furnished evidence which ought to have been left to the jury."

Spill v. Maule, above referred to, has never, so far as I can find, been questioned, and seems to have been repeatedly referred to with judicial approval. The action was for libel contained in a letter, and although the court held that the words complained of were not, in view of the circumstances, so excessive and beyond the proprieties of the occasion as of themselves to afford evidence of malice, Chief Justice Cockburn, in the course of his opinion, said (page 235):

"We are all agreed that the general proposition contended for by the counsel for the plaintiff is right, and that it may be that the language used in a libel, though under other circumstances justifiable, may be so much too violent for the occasion and circumstances to which it is applied as to form strong evidence of malice, upon the issue of whether the communication is covered by the privilege, and that an inference of actual malice may be drawn from its use."

That evidence of malice may be intrinsic to the publication seems to be the accepted rule in Pennsylvania (Neeb v. Hope, 111 Pa. 145, 2 Atl. 568; Jackson v. Pittsburgh Times, 152 Pa. 406, 25 Atl. 613, 34 Am. St. Rep. 659), and in Bacon v. Michigan Central R. Co., 66 Mich. 166, 33 N. W. 181, the proposition had the concurrence of two out of four sitting judges.

The judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

---

(87 Misc. Rep. 451)

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. PURDY et al., Tax Com'rs.

(Supreme Court, Special Term, New York County. November, 1914.)

MUNICIPAL CORPORATIONS (§ 967*)—TAXES—PROPERTY SUBJECT—"BUILDING COMMENCED"—"CONSTRUCTION OF A BUILDING."

　　The excavation of a plot of land is not a "building commenced" thereon, or the "construction of a building" within Greater New York Charter (Laws 1901, c. 466) § 889a, as added by Laws 1913, c. 324, § 2, providing that a building in course of construction, commenced since October 1, 1912, and not ready for occupancy, shall not be assessed.

　　[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2062–2067; Dec. Dig. § 967.*]