CHAMPE S. ANDREWS, Respondent, *v.* ASA B. GARDINER Appellant.

**Libel — privileged communications — application to governor for pardon of convicted person — when statements made by counsel of petitioner of and concerning counsel for society, who opposed the application, are privileged although false and defamatory.**

1. Statements made by counsel of the petitioner, of and concerning an opposing party, upon an application for the pardon of a convicted person, are privileged, although false and defamatory, when pertinent to the appeal for mercy if made in good faith and without malice. The privilege in such case is qualified, not absolute.

2. An attorney at law acting as counsel for a physician convicted of the crime of abortion — who had served the sentence imposed upon him — in the preparation and presentation to the governor of a petition, signed by him and by the convict as petitioner, for the pardon of the petitioner and his restoration to citizenship, made false and defamatory charges against the character and conduct of the counsel for a medical society which opposed the pardon. In an action for libel thereafter brought against him by the counsel for the society, the convict's counsel attempted no justification for such charges but interposed the defense that in presenting the petition to the governor he acted as counsel for a client and that the statements made by him in such petition and upon the hearing were made in good faith and were pertinent and, therefore, privileged. *Held*, upon examination of the evidence, that it was error for the courts below to hold that the defamatory charges were not pertinent to the appeal for mercy. The statements may have been false, but they were not irrelevant; therefore, they were privileged if made in good faith, and the ruling of the court, affirmed by the Appellate Division, that the plaintiff was entitled to damages and that the only duty of the jury was to assess the amount, constitutes reversible error.

*Andrews* v. *Gardiner*, 173 App. Div. 967, reversed.

(Argued October 11, 1918; decided November 12, 1918.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 24, 1916, unanimously affirm-

ing a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George Edwin Joseph* for appellant. The alleged libelous communication was privileged. (*Woods* v. *Wiman*, 122 N. Y. 445; *Connelle* v. *Blanton*, 163 S. W. Rep. 404; *Ormsby* v. *Douglass*, 37 N. Y. 477; *Lake* v. *King*, 1 Sandf. 131; *Bingham* v. *Gaynor*, 203 N. Y. 50; *Youmans* v. *Smith*, 153 N. Y. 214.) The court submitted the case to the jury upon a wholly erroneous theory of law in that the court assumed to find as matter of law that the statements contained in the alleged libelous communication were not relevant and not pertinent, although it expressly found that they were uttered upon a privileged occasion. (*Hastings* v. *Lusk*, 22 Wend. 410; *Klenck* v. *Colby*, 46 N. Y. 427; *Morton* v. *Knipe*, 128 App. Div. 94; *White* v. *Carroll*, 42 N. Y. 61; *Marsh* v. *Ellsworth*, 50 N. Y. 309; *Hemmens* v. *Nelson*, 138 N. Y. 518; *Andrews* v. *Gardiner*, 165 App. Div. 529; 165 App. Div. 597; 168 App. Div. 632.)

*Louis Sturcke* for respondent. Libelous statements made by an attorney in the course of judicial or quasi-judicial proceedings are privileged only if the statements themselves are relevant and pertinent to the issue. (*Ring* v. *Wheeler*, 7 Cow. 725; *White* v. *Carroll*, 42 N. Y. 161; *Vigours* v. *Palmer*, Browne's Reports, 40; *Hastings* v. *Lusk*, 22 Wend. 410; *Marsh* v. *Ellsworth*, 50 N. Y. 309; *Moore* v. *Manufacturers' Nat. Bank*, 123 N. Y. 420; *Youmans* v. *Smith*, 153 N. Y. 214; *King* v. *McKissick*, 126 Fed. Rep. 215; *McLaughlin* v. *Cowley*, 127 Mass. 316; *Wright* v. *Lothrop*, 149 Mass. 385; *Barnett* v. *Loud*, 115 N. E. Rep. 767; *Kemper* v. *Fort*, 219 Penn. St. 85.) The libelous statements which the court held to be unprivileged were not relevant and pertinent upon the

issue before the governor. (*Sickles* v. *Kling*, 60 App. Div. 515; *Youmans* v. *Smith*, 153 N. Y. 214; *Porter* v. *Valentine*, 18 Misc. Rep. 214; *Platner* v. *Platner*, 78 N. Y. 90.) The defendant has no ground for complaint because the trial judge refused to treat the case as one of " qualified privilege." The rule with regard to relevancy and pertinency applies to both classes of cases, qualified and absolute privilege cases. (Odgers on Libel & Slander [4th ed.], 215, 234, 332, 333; *Bingham* v. *Gaynor*, 203 N. Y. 27; *Spill* v. *Maule*, L. R. 4 Exch. 232; *Collier* v. *Postum Cereal Co., Ltd.*, 150 App. Div. 178; *Ashcroft* v. *Hammond*, 197 N. Y. 488.)

CARDOZO, J. The action is for libel. One Conrad, a doctor in the city of New York, was convicted of the crime of attempted abortion. The plaintiff, who was then the attorney for the County Medical Society, had much to do with the prosecution. He laid the trap in which Conrad was caught. A woman visited Conrad and pretended to need his services. She did this at the plaintiff's instance. She was acting as his ally and the ally of the police. Conrad was arrested in the act of examining her. He said that the purpose of the examination was innocent. A jury found that it was criminal. His conviction was affirmed; and he served a term in prison.

In 1905, the convict, then released, petitioned Governor Higgins for pardon. His aim was restoration to citizenship that he might practice his profession. The County Medical Society filed a protest against the pardon. In this protest it charged that Conrad was guilty of many other like crimes. He was pictured as having practiced a business of abortion for years both in New York and in Atlantic City. The protest was signed by the society in its corporate name by its president and other officers. It was signed also by the plaintiff in the name of his

firm as counsel. The petition for clemency, thus opposed, was denied.

In 1911, Conrad renewed his application. His petition was addressed to Governor Dix, and was signed by the defendant, a member of the bar. The gist of his grievance was persecution by the plaintiff. The charge was that the plaintiff had inflamed the society through false complaints, and had trapped an innocent man into a false appearance of guilt. There was a bitter assault upon the plaintiff's character. It was said in substance that he had used his position as counsel for the society to manufacture cases and extort money from his victims. He was characterized as an unprincipled, blackmailing, depraved scoundrel. Attached to the petition is a second document, also signed by the defendant. In this he says " the above was prepared for me and receives my heartiest concurrence." Then follows a statement of his friendship for Conrad and his faith in Conrad's innocence.

There is evidence that before submitting this petition, the defendant went over it with his client. He asked why attack upon the plaintiff's character was necessary. The client said that it was necessary to break the force of the protest which had been filed in opposition to the previous petition. He said that this protest, though in form that of the society, was in fact the work of the plaintiff, that its charges were false, and that the governor ought to know the truth about their author. The defendant says that in submitting the petition to the governor, he made an oral statement. He told the governor, he says, that he appeared as counsel for Conrad; that he had no personal knowledge of the truth of the petition; that pardon had been recommended by the trial judge and by many other worthy citizens; that the only opposition came from the County Medical Society; that the society in submitting its protest to Governor Higgins, had relied upon the information furnished by the plain-

tiff; that the scandalous charges in the protest were false; and that those charges ought not to defeat a pardon if the man who made them was unworthy of belief. There was no general publication of the petition. It was handed to the governor, and to no one else.

This action for libel followed. There have been three trials. On the first trial, the complaint was dismissed at the close of the plaintiff's case. The Appellate Division reversed, and ordered a new trial. The court held (165 App. Div. 595) that on the record as it then stood, some, if not all, of the charges against the plaintiff were *prima facie* irrelevant to the application for pardon, and, therefore, were not privileged. On that trial there was no evidence of the earlier petition and protest. On the second trial, the complaint was again dismissed at the close of the plaintiff's case. The argument was that proof of the earlier petition and protest had changed the situation. The Appellate Division again reversed (168 App. Div. 629). The court said that until there was some denial of the truth of the charges in the protest, there was no need to inquire into the character of the man who made them. On the third trial, the defendant and Conrad were witnesses for the first time. Their testimony supplies the denial that was lacking before, and explains the reasons that prompted the assault upon the plaintiff's character. The trial judge ruled, however, that the assault had no semblance of relevance to the proceeding before the governor; that there was, therefore, no privilege; that the plaintiff was entitled to damages; and that the only duty of the jury was to assess the amount.

The defamatory charges against the plaintiff were false. There is no blot upon his character. Indeed, there is no attempt at justification. The defense is not justification, but privilege. The defendant says that in presenting this petition to the governor, he acted as

counsel for a client.   The rule is that counsel are privileged in respect of any statements, oral or written, made in judicial proceedings, and pertinent thereto.   In. England, the immunity is broader.   There the privilege exists whether the statements are relevant or not (*Munster v. Lamb*, 11 Q. B. D. 588; *Royal Aquarium v. Parkinson*, 1892, 1 Q. B. D. 431; *Barrett v. Kearns*, 1905, 1 K. B. 504; Odgers on Libel and Slander, 233).   With us the condition is added that the privilege will be lost if the libel is irrelevant (*Youmans v. Smith*, 153 N. Y. 214; *Moore v. Manfrs. Nat. Bank*, 123 N. Y. 420, 426; *McLaughlin v. Cowley*, 127 Mass. 316; *Barnett v. Loud*, 226 Mass. 447; *Kemper v. Fort*, 219 Penn. St. 85).   But while counsel keep within those bounds, their immunity is absolute.   For the moment, we put aside the question whether there is any difference in that respect between statements in judicial proceedings and statements to the governor in a petition for clemency.   We view the case provisionally as if the statements had been made in court.

We think it was error to rule that the defamatory charges were not pertinent to the appeal for mercy. There is no room in such matters for any strict or narrow test.   Much must be left to the discretion of the advocate.   The privilege embraces anything that may possibly be pertinent (*Youmans v. Smith, supra*).   We cannot say that the plaintiff's reputation was so plainly foreign to the issue that counsel should have refused to join a client in attacking it.   The client took the ground that the plaintiff had planned the prosecution, had used it as a means of winning profit and reputation, and had blocked an earlier petition for pardon by overwhelming his victim under an avalanche of charges.   Counsel was assured that those charges were false.   If the governor believed them, pardon was almost certain to be refused.   They revealed Conrad, not as an offender in one instance,

but as a hardened criminal. The argument was that the governor should not believe them. They had been put forward, it was said, by the plaintiff, who was the head and front of the conspiracy; he had hoodwinked the society into adopting them; in fact they were his work; and his character was such that he was unworthy of belief. Those statements may have been false, but they were not impertinent (*Conley* v. *Key*, 98 Ga. 115). To appreciate their pertinency, we may ask ourselves what the duty of counsel would have been, had they been true. The answer is not doubtful.

The question remains whether the defendant's privilege is qualified or absolute. The difference is that malice destroys the one and does not change the other (Odgers on Libel and Slander, p. 227). If the statements had been made in court, there is no doubt, since they were pertinent, that the privilege would have been absolute (*Sickles* v. *Kling*, 60 App. Div. 515). We assume that the privilege would be the same if the statements had been made before tribunals having attributes similar to those of courts (*Royal Aquarium* v. *Parkinson, supra; Dawkins* v. *Lord Rokeby*, L. R. 8 Q. B. 255; 7 H. L. 744; *Barrett* v. *Kearns, supra; Watson* v. *McEwan*, 1905, A. C. 480; *Bottomley* v. *Brougham*, 1908, 1 K. B. 584; *Rogers* v. *Thompson*, 89 N. J. L. 639; *Kemper* v. *Fort*, 219 Penn. St. 85). There is no difference in respect of degree between the privilege of counsel and that of parties and witnesses. They are phases of the same immunity (*Munster* v. *Lamb, supra; Revis* v. *Smith*, 18 C. B. 126; *Garr* v. *Selden*, 4 N. Y. 91; *Kemper* v. *Fort*, *supra*, at p. 89; *Laing* v. *Mitten*, 185 Mass. 233, 235). " Neither party, witness, counsel, jury or judge, can be put to answer, civilly or criminally, for words spoken in office " (Lord Mansfield in *R.* v. *Skinner*, Lofft, 55). The courts have refused, however, to apply the rule of absolute privilege to proceedings which, though

official and public, are not in substance judicial (*Proctor v. Webster*, 16 Q. B. D. 112, 114; *Royal Aquarium v. Parkinson, supra; Barrett v. Kearns, supra; Blakeslee v. Carroll*, 64 Conn. 223; *Wright v. Lothrop*, 149 Mass. 385, 390; Odgers on Libel and Slander, p. 233). In such cases the privilege is the qualified one that attaches to the honest assertion of a right or fulfilment of a duty (*Bingham v. Gaynor*, 203 N. Y. 27, 31, 32; *Capital & Counties Bank v. Henty*, 7 App. Cas. 741; *Royal Aquarium v. Parkinson, supra*).

The question, therefore, is whether absolute privilege ought now to be extended to an application for a pardon. It was so extended by the Court of Civil Appeals of Texas in *Connellee v. Blanton* (163 S. W. Rep. 404); but we think erroneously. Such an application is not a proceeding in court, nor one before an officer having " attributes similar " to a court's (*Royal Aquarium v. Parkinson, supra*). It is a petition for mere grace and mercy. It may be made by any one, and without the convict's knowledge. It grows out of the action of the courts, but it seeks to reverse their action by an appeal to motives and arguments which are not those of jurisprudence. There are no clearly defined issues. There is often a most informal hearing. Sometimes there is argument by counsel. As often, the plea for mercy is made by wife or kin or friends. Whatever privilege belongs to counsel, should belong also to them: the right to plead for clemency is not a monopoly of the bar. Even if counsel speaks, his words are not " spoken in office " (*R. v. Skinner, supra*). Nor are they subject to like restraints. At such a time anything is pertinent that may move the mind to doubt or the heart to charity. It is not necessary that reason be convinced; it is enough that compassion is stirred. The range of possible inquiry gives warning that the privilege should be confined within the limits of good faith. Where the test of the pertinent

is so vague, there must be some check upon calumny. While convict and counsel act in good faith, they are immune; the privilege is lost when they defame with malice. There is no license, under cover of such an occasion, to publish charges known to be false or put forward for revenge. We are not dealing here with statements made by witnesses required to attend a hearing (Prison Law, secs. 261, 262, 265) : there is a distinction between the testimony of witnesses and voluntary complaints (*Wright* v. *Lothrop, supra*). We do not go beyond the case before us. Our ruling is in harmony with the tendency of courts to restrict the scope of absolute privilege in libel (*Blakeslee* v. *Carroll, supra*, at p. 235; Odgers on Libel and Slander, pp. 230, 231). It is in harmony with rulings made where petitions have been submitted to the governor or the legislature for relief against oppression or the redress of other wrongs (*Wright* v. *Lothrop, supra*, at p. 390; *Proctor* v. *Webster, supra;* *Woods* v. *Wiman*, 122 N. Y. 445; *Cook* v. *Hill*, 3 Sandf. Supr. Ct. 341; *Maurice* v. *Worden*, 54 Md. 233): the oppression of a harsh or unjust judgment is not to be distinguished in this respect from any other abuse of power. The ruling gives just protection alike to suitor and to counsel, and charges them with liability only when the privilege is abused.

The judgment should be reversed, and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, POUND and CRANE, JJ., concur; ANDREWS, J., not sitting.

Judgment reversed, etc.