■ SEYMA DACHOWITZ et al., Appellants, v JACK KRANIS, Respondent.— In an action, *inter alia,* to recover damages for libel, plaintiffs appeal from an order of the Supreme Court, Kings County, entered May 17, 1977, which, upon treating defendant's motion to dismiss the complaint for failure to state a cause of action as one for summary judgment, granted the motion and dismissed the complaint. Order reversed, on the law, with $50 costs and disbursements, and motion denied. Defendant's time to answer is extended until 20 days after entry of the order to be made hereon. Plaintiffs-appellants, Seyma Dachowitz and her husband, Rabbi Pincus Dachowitz, brought this action to recover damages from defendant-respondent Jack Kranis, an attorney, for his having asserted, in an affidavit submitted in a judicial proceeding, that the plaintiff wife had been convicted of crimes in both the Federal and State courts. The defendant, claiming his statements were absolutely privileged, was granted summary judgment and the complaint was dismissed. The alleged libel was made by Kranis in an action pending in the Civil Court of the City of New York. In that action, Kranis sued, *among others,* the plaintiff wife and a realty corporation in which she was an officer, to collect a legal fee for services he allegedly rendered on their behalf. After the granting of a motion to dismiss Kranis' action on the ground that it was time-barred, he moved to reargue. In his affidavit on reargument, he made the following statement: "That I was first retained by the Defendants, which include the same Seyma (Sam) Dachowitz who was convicted in Federal and State Courts for various improprieties as the accountant for Bernard Bergmann *[sic],* the nursing home magnate". In granting summary judgment to the defendant and dismissing the complaint, Special Term accepted defendant's contention that the basis for his having made the statement was to impeach and reflect upon the credibility of the adversary party. Therefore, reasoned Special Term, the statement was at least possibly pertinent and the defendant had established on the record the defense of absolute privilege with respect to the libel causes of action. We respectfully disagree with Special Term's analysis and with its ultimate conclusion. We agree with Special Term and the dissenter herein that an absolute privilege attaches to an oral or written statement made in a judicial proceeding which is pertinent to the proceeding and that the term "pertinent" has been liberally construed by the courts to attach to any statement that may possibly be or become material or pertinent *(Andrews v Gardiner,* 224 NY 440, 441; *People ex rel. Bensky v Warden,* 258 NY 55, 59; *Martirano v Frost,* 25 NY2d 505, 507). We also agree that the barest rationality, divorced from any palpable or pragmatic degree of probability, suffices, and that any doubt should be resolved in favor of upholding the privilege *(Seltzer v Fields,* 20 AD2d 60, 62–63, affd 14 NY2d 624; *Klein v Walston & Co.,* 41 Misc 2d 379, affd 27 AD2d 988). It is also true that a statement made in a judicial proceeding accusing an opposing party of having been convicted of a crime may, in a given case, be deemed privileged on the ground that it was made to impeach the credibility of that party *(Piccini v Myers,* 9 Misc 2d 169). However, after a thorough perusal of the four corners of the papers submitted by the parties in this action, we are of

the opinion that there is not one scintilla of evidence present upon which to base the possible pertinency of defendant's statement. Furthermore, the proof which has been adduced strongly negates defendant's contention that the statement was made for the purpose of impeaching the credibility of plaintiff Seyma Dachowitz. Specifically, in the affidavits and affirmations submitted in opposition to defendant's motion in this action, plaintiffs and their attorney assert that: (1) plaintiff Seyma Dachowitz is the wife of plaintiff Rabbi Pincus Dachowitz and has been married to him for 25 years; (2) Seyma Dachowitz is a female and has never been known as "Sam" Dachowitz; (3) she has never been convicted in a Federal or State court of any impropriety as the accountant for Bernard Bergman and is not even an accountant; (4) Rabbi Pincus Dachowitz has been the Chief Rabbi and spiritual leader of Congregation B'Nai Israel of Midwood for 31 years; (5) defendant Jack Kranis has been a member of that congregation for 31 years and has been its president and chairman of the board; (6) during that period defendant had social and professional relations with the Rabbi and his family on numerous occasions, was a guest in the latter's home and was his lawyer and friend; and (7) the plaintiff Seyma Dachowitz has known defendant for 25 years. In none of the papers submitted in support of defendant's motion herein was any serious effort made to challenge the accuracy of the afore-mentioned assertions. Moreover, in a reply affidavit, defendant Kranis conceded that he and Pincus Dachowitz have known each other for "many, many years". Thus, the record is devoid of any grounds, either reasonable, unreasonable, mistaken, imaginary, or even feigned, upon which it could be hald that defendant's gratuitous statement was at least "possibly pertinent" (see *Seltzer v Fields,* 20 AD2d 60, 62, *supra).* It should also be observed that in a supplemental affirmation submitted to the Civil Court on behalf of Kranis' motion to reargue, the affirmant sought to correct the 36-word spurious statement about Seyma Dachowitz; he labeled it a "typographical error" and further stated "upon information and belief Seyma Dachowitz is the wife of Sam Dachowitz * * * who was upon information and belief, an officer or shareholder or both of the defendant corporation Seyma Realty Corp., Inc. In fact much of the negotiation was conducted with the same Sam Dachowitz, who acted on behalf of the corporation." That affirmation, made "upon information and belief", should be given no weight or credence since, first, it was not made by defendant, but by his associate, Richard Kranis, also an attorney, and, second, nowhere in the affirmation is there a claim that the Sam Dachowitz mentioned either was Bernard Bergman's accountant, etc., or that defendant believed that Sam Dachowitz held that position, and that defendant was under the impression that Seyma Dachowitz and Sam Dachowitz were one and the same person. In passing, it should also be noted that the subject 36-word derogatory and spurious declaration of defendant concerning Seyma Dachowitz hardly falls within the category of a "typographical error", as we understand the term. That expression usually refers to a defect only as to form, or to an inadvertent printing or typing mistake, which does not render the whole assertion nugatory and of no effect (cf. *People v West,* 128 Ill App 2d 63). Accordingly, in our opinion, the statement, on its face, added nothing to the issue before the Civil Court on the motion for reargument, to wit, whether Kranis' action for a legal fee was time-barred. We also believe that the uncontroverted evidence adduced by plaintiffs on Kranis' motion in this action demonstrates, prima facie, that the statement was so outrageously out of context as to permit one to conclude (from the mere fact that it was uttered) that it was motivated by no other desire than to defame (cf. *Martirano v Frost,* 25 NY2d 505, 508,

*supra).* Thus, the conclusions of Special Term that the "alleged libelous statement herein was not 'so obviously impertinent as not to admit of discussion'" and was made to impeach the credibility of the adversary party, are, on this record, baseless. Whether the statement complained of was made by the defendant in good faith and without malice in the belief that it was pertinent and material to the issues between the parties, or whether it was maliciously made to libel and injure the plaintiff wife, are questions of fact which should be decided upon a trial (see *Wiser v Koval,* 50 AD2d 523, 524). Titone, J. P., Suozzi and Cohalan, JJ., concur. Hawkins, J., dissents and votes to affirm the order granting defendant summary judgment and dismissing the complaint, with the following memorandum: Prefatorially, we are confronted with a "hard case". It is well, therefore, to recall Mr. Justice Robert H. Jackson's admonition: "We agree that this is a hard case, but we cannot agree that it should be allowed to make bad law" *(Communcations Comm. v WOKO,* 329 US 223, 229). This action in libel has its genesis in a prior action in which the plaintiffs-appellants, among others, were sued for legal fees by the defendant-respondent. In his affidavit in support of his motion to reargue and vacate a prior determination of the Civil Court of the City of New York, which had dismissed his complaint as time-barred, defendant, an attorney, stated: "That I was first retained by the Defendants, which included the same Seyma (Sam) Dachowitz who was convicted in Federal and State Courts for various improprieties as the accountant for Bernard Bergmann *[sic],* the nursing home magnate". The allegation is conceded by defendant to be a canard. The complaint alleges three causes of action: the first cause of action, on behalf of Seyma Dachowitz, alleges two publications of the defamatory matter by defendant, one to his secretary and the other by the filing of the affidavit with the Clerk of the Civil Court; the second cause of action, also on behalf of Seyma Dachowitz, alleges that the statement was made with express malice; and the third cause of action pleads loss of services by Pincus Dachowitz, husband of Seyma Dachowitz, occasioned by the libel. Special Term converted defendant's motion to dismiss the complaint for failure to state a cause of action to one for summary judgment, after according the parties an opportunity to submit memoranda of law. In its decision, Special Term, citing, *inter alia, Andrews v Gardiner* (224 NY 440), *People ex rel. Bensky v Warden* (258 NY 55) and *Martirano v Frost* (25 NY2d 505), properly noted that, if pertinent, absolute privilege attaches to statements made in the course of judicial proceedings. *Seltzer v Fields* (20 AD2d 60, affd 14 NY2d 624) was cited as authority that "the barest rationality, divorced from any palpable or pragmatic degree of probability, suffices". Whether denominated a "privilege" or "in fact a right" (1 Seelman, Law of Libel and Slander, pars 191, 233), or an absolute privilege *(Martirano v Frost,* 25 NY2d 505, 507, *supra),* the abiding question is whether the statement is possibly or plausibly relevant or pertinent to the judicial proceeding so as to bar the action *(Andrews v Gardiner, supra; People ex rel. Bensky v Warden, supra).* This thorny problem was recently considered by the Court of Appeals in *Martirano v Frost (supra),* which involved an alleged slander whereby one attorney accused another of "soliciting" in the very action then before the bench. The majority of the Court of Appeals held that absolute privilege barred the action (pp 507-508): "Since there can be no dispute or question that '[t]he privilege embraces anything that may possibly be pertinent' *(Andrews v. Gardiner,* 224 N. Y. 440, 445), it follows that a statement, made in open court in the course of a judicial proceeding, is absolutely privileged if, by any view or under any circumstances, it may be considered pertinent to the litigation. (See *Feld-*

*man v. Bernham,* 7 N Y 2d 772, affg. 6 A D 2d 498, 500; *People ex rel. Bensky v. Warden,* 258 N. Y. 55, 59–60; *Youmans v. Smith,* 153 N. Y. 214, 219; *Chapman v. Dick,* 197 App. Div. 551, 559; see, also, Restatement, Torts, § 588, comment *a.)* In considering whether a particular statement is 'pertinent' and, by that token, privileged, we are not limited, as has been urged, to the narrow and technical rules normally applied to determine the admissibility of evidence. Nothing that is said in the court room may be the subject of an action for defamation unless, this court has declared, it is 'so obviously impertinent as not to admit of discussion, and so needlessly defamatory as to warrant the inference of express malice'. *(Youmans v Smith,* 153 N. Y. 214, 220, *supra;* see *People ex rel. Bensky v. Warden,* 258 N. Y. 55, 59, *supra.)* In other words, the statement must be so *outrageously out of context as to permit one to conclude, from the mere fact that the statement was uttered, that it was motivated by no other desire than to defame."* (Emphasis supplied.) I am not unmindful that matter is not protected if it is "obviously impertinent" and "needlessly defamatory" *(Youmans v Smith,* 153 NY 214, 220) and that this privilege is "not a license which protects every slanderous publication or statement made in the course of judicial proceedings" *(Moore v Manufacturers' Nat. Bank,* 123 NY 420, 426). In *Martirano v Frost (supra),* although not so stated, I suggest that the Court of Appeals adopted Seelman's thesis that although termed a "privilege", the defense that the libel occurred in the course of a judicial proceeding is in actuality a "right". Rather than paraphrasing that author's language, it is preferably quoted (1 Seelman, Law of Libel and Slander, par 191): "A Defense of Right, Not One of Privilege. The next defense to be considered is termed a privilege. It is in fact a right. What all men equally may do, without excuse, is a right. What a particular man may do, which, in his particular case or the particular circumstances, excuses his wrongful act, is a privilege. This distinction has been pointed out by other writers and by judges, is logical and should be emphasized so that Right, whose motive cannot be questioned and privilege, whose good motive is the grace that saves the wrongdoer, may be properly understood. The interest of society requires that whenever men seek the aid of courts of justice, either to assert or to defend rights of person, property, liberty, speech and writing therein must be untrammelled and free. The good of all must prevail over the incidental harm to the individual. So the law offers a shield to the one who in legal proceedings publishes a libel, not because it wishes to encourage libel, but because if men were afraid to set forth their rights in legal proceedings for fear of liability to libel suits, greater harm would result, in the suppression of truth. The law gives to all who take part in judicial proceedings, judge, attorney, counsel, printer, witness, litigant, a *right* to speak and to write, subject only to one limitation; that what is said or written bears upon the subject of litigation; that is, is pertinent, relevant, germane thereto. This right of all persons, within the limitation an absolute one, is improperly called a privilege." (Emphasis in original.) Lest it be deemed that these are merely the sentiments of a zealous or contentious text writer advancing a particular thesis, in *Martirano v Frost* (25 NY2d 505, 508–509, *supra)* the Court of Appeals weighed the consequences of the privilege or right as follows: "It may be unfortunate that the plaintiff must suffer an attack on his professional integrity without any means of judicial redress. But the possible harm to him as an individual is far outweighed by the need—reflected in the policy underlying the privilege here invoked—to encourage parties to litigation, as well as counsel and witnesses, to speak freely in the course of judicial proceedings. To decide that a party speaks at

his peril, if it later be determined that some statement of his was not technically relevant to the issue involved, 'would be an impediment to justice, because it would hamper the search for truth and prevent making inquiries with that freedom and boldness which the welfare of society requires.' *(Youmans v. Smith,* 153 N. Y. 214, 220, *supra;* see, *People ex rel. Bensky v Warden,* 258 N. Y. 55, 59–60, *supra; Marsh v Ellsworth,* 50 N. Y. 309, 312.)" In *Seltzer v Fields* (20 AD2d 60, 62, affd 14 NY2d 624, *supra),* Chief Judge Breitel, then an Associate Justice of the Appellate Division, First Department, writing for a unanimous court, held that writing and words used in the course of judicial proceedings and possibly bearing on the litigation are absolutely privileged, even if immaterial and irrelevant: "At least for the law of defamation, therefore, whatever may be the logic or the rule elsewhere, the possibly pertinent need be neither relevant nor material to the threshold degree required in other areas of the law. It is enough if the offending statement may possibly bear on the issues in litigation now or at some future time. Presumably there is some residual test of rationality, but it would seem that the barest rationality, divorced from any palpable or pragmatic degree or probability, suffices." Returning to the circumstances attending the prior action, the matter objected to was interjected in an anticipatory attack upon the credibility of Seyma Dachowitz in conjunction with the defendant's motion to reargue. The litmus test for the defense to attach is not pertinency; it attaches unless there is a holding concluding, as a matter of law, that the utterance was wholly impertinent. "Any allegation which appellant * * * could possibly have believed would tend to influence the court to grant the order cannot be said to be impertinent beyond any question" *(People ex rel. Bensky v Warden, supra,* p 60). Premature or anticipatory matter does not bar the assertion of the defense: "The rule relating to absolute privilege is sufficiently broad to extend to all matters which may by any possibility, under any circumstances and at any stage of the proceeding be or become material or pertinent *(Chapman v. Dick,* 197 App. Div. 551). Hence, even if it be assumed that the defamatory attack upon Klein was prematurely made, it does not follow that the offending matter was not privileged; since it might well have become pertinent at some later stage of the proceedings" *(Klein v Walston & Co.,* 41 Misc 2d 379, 382, affd 27 AD2d 988). The burden rests not upon a defendant to establish relevancy or pertinency, but rather upon a plaintiff to demonstrate impertinency or irrelevancy—if we persist in using those words—conclusively and as a matter of law. Granting the falsity of the defamatory matter, nevertheless, it referred and related to the credibility of plaintiff Seyma Dachowitz. This is an area which defendant could permissibly probe to impugn plaintiff Seyma Dachowitz' credibility on cross-examination. That the words "relevant" and "pertinent" are not readily or easily defined or applied is expounded upon in *Seltzer v Fields* (20 AD2d 60, 62–63, *supra):* "The test is well stated in Corpus Juris Secundum (vol. 53, Libel and Slander, § 104, subd. c, par. [b]) and expresses the same teaching as that of the New York authorities. It reads: 'In the earliest of the leading cases on the subject the words used in determining the extent of matter that may be absolutely privileged were "relevant" or "pertinent;" but these words have in a measure a technical meaning, and perhaps they are not the best words that could be used. So some courts have preferred the use of the words "have in reference," "having relation to the cause or subject matter," or "made with reference;" and strict legal materiality or relevancy is not required to confer the privilege. There is difficulty in determining in some cases what is relevant or pertinent, and in deciding the question the courts are liberal,

and the privilege embraces anything that may possibly be pertinent or which has enough appearance of connection with the case so that a reasonable man might think it relevant. All doubt should be resolved in favor of its relevancy or pertinency, and for the purposes of relevancy the court will assume the alleged slanderous charges to be true, however false they may have been in fact.'" Of course, sustaining the defense does not and should not be construed as condoning defendant's untrue, intemperate and gratuitous accusations. Plaintiffs' consolation must abide in their appreciating that they have been denied redress for their hurts in the greater interests of the judicial process in its "'search for truth'" (see *Martirano v Frost,* 25 NY2d 503, 509, *supra).*