PARK KNOLL ASSOCIATES, Respondent, v APHRODITE SCHMIDT, Appellant.

Second Department, October 18, 1982

APPEARANCES OF COUNSEL

*Ryan & Ryan* (*Paula G. A. Ryan* of counsel), for appellant.

*Eaton, Van Winkle & Greenspoon* (*Charles G. Mills* and *Samuel N. Greenspoon* of counsel), for respondent.

**OPINION OF THE COURT**

BOYERS, J.

The principal issue on this appeal, which is one of first impression in this State, is whether allegedly libelous "tenant's statement[s] of complaint" filed by individual tenants with the New York State Division of Housing and Community Renewal pursuant to the provisions of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4, as amd) and the regulations promulgated thereunder, and allegedly composed by defendant who concededly acted

as scrivenor and/or advisor with regard to such documents, are protected by either an absolute or a qualified privilege. We hold today that the absolute immunity afforded to communications made to a body acting in a quasi-judicial capacity applies to the individual complaining tenants and extends to the defendant in her capacity as leader of the tenants' association. Therefore, the allegedly defamatory statements cannot serve as the basis for the imposition of liability.

Park Knoll Associates, a limited partnership and the plaintiff in this defamation action, owns, manages and operates a Westchester apartment complex known as Park Knoll. The defendant, Aphrodite Schmidt, resides at the subject premises and serves as president of Park Knoll Tenants Association, Inc., a not-for-profit corporation which represents Park Knoll tenants.

Plaintiff commenced this action against defendant on or about June 18, 1980. The complaint, which sets forth 10 causes of action for libel, alleges that defendant "designed to libel the plaintiff in its trade and business by falsely accusing it of violating the applicable law and regulations of the State of New York and of the Division of Housing and Community Renewal * * * and further falsely accusing the plaintiff of making perjurious statements to said Division."

Each cause of action alleges a libel published in March or April, 1980, and sets forth verbatim the communications complained of, which comprise portions of 10 "Tenant's Statement[s] of Complaint" filed pursuant to the Emergency Tenant Protection Act of 1974 (ETPA) (L 1974, ch 576, § 4, as amd). The complaint forms, which were furnished by the New York State Division of Housing and Community Renewal (the division), were received by the Office of Rent Administration, the entity designated by the commissioner of the division to administer the ETPA (see Emergency Tenant Protection Regulations, § 3, subd 2, 9 NYCRR 2500.2 [b] [1]).

Each statement was affirmed by a different tenant of the Park Knoll complex. Seven of them are signed by defendant as "[p]repared [b]y" Aphrodite Schmidt. For example,

the tenant's statement of complaint which is reproduced, in part, in plaintiff's first cause of action and a complete copy of which is annexed to the complaint, states in pertinent part:

"The RTP-25 form was represented as approval by your agency of the $390 rent being charged me. Please note that the landlord indicates that the prior tenant's rent was at $324.16 and that the lease was broken. Accordingly, *Mrs. Schmidt advises me* that only a 6% vacancy rate adjustment could be applied on the rental amount of the prior tenant's unexpired term. It would appear that my proper legal regulated rent should be at $349.61 per month. The prior tenant was a Robert Ucci who cannot be located and I ask that his lease and that of the prior tenants since 1974 be provided by the landlord for review. *Mrs. Schmidt indicates to me* that the prior tenant may have been overcharged, and that this possible circumstance has bearing on the proper base rent to me * * *

"In addition, *Mrs. Schmidt advises me* that the landlord was covered by insurance to restore the premises to its original condition and these costs cannot be passed on to the tenants * * *

*"Mrs. Schmidt also advises me* that the landlord has 'renovated' certain other 3 room apartments in the Park Knoll complex by replacing original 28 year old equipment in the kitchens and bathrooms and charged $359.50 for said apartments in excess of the allowable legal regulated rent, and that this matter of those tenants' complaints is pending with your agency." (Emphasis supplied.)

In six of the statements, the complaining tenant asks that defendant act as his or her representative "in all matters that [the tenant did] not have full knowledge about as a new tenant", in the event a hearing "is requested by the landlord or deemed necessary". The statement that forms the basis of the eighth cause of action was "submitted with the assistance of the President of the Park Knoll Tenants Association" and in the tenth, the statement was "submitted with the assistance and preparation of Aphrodite Schmidt".

In each statement, the complaining tenant makes reference to advice furnished by defendant. While none of the 10

tenant's statements filed with the division specifically quotes remarks made by defendant, certain portions of the particular statements which mention defendant by name are followed by the phrases "advises me" or "indicates to me" or are preceded by the phrase "according to". Plaintiff did not sue any of the 10 tenants who filed a statement of complaint.

In October, 1980, defendant moved for summary judgment dismissing the complaint on the ground, *inter alia,* that "the alleged defamatory statements were privileged". By order dated February 10, 1981, Special Term (MARBACH, J.), denied the motion, observing with regard to defendant's claim of absolute privilege, that such "argument would have merit if it were the complaining tenants who were sued * * * and the statements contained in the various complaints were the basis [*sic*] for the action (*Studley Inc.* v *Lefrak,* 50 A.D. 2d 162, affd 41 N.Y. 2d 881)." Noting that plaintiff's action was based upon defendant's statements to the complaining tenants, which statements were later incorporated into the complaints filed by the tenants, Special Term reasoned that as it was the communications between the tenants and the division that formed the bases of the action, such communications were subject to a qualified, rather than an absolute, privilege. No appeal was taken from this order.

In April, 1981, plaintiff moved for an order of preclusion pursuant to CPLR 3126. Defendant then cross-moved pursuant to CPLR 3211 (subd [a], par 7) to dismiss the complaint for failure to state a cause of action, or in the alternative, for a protective order. By order dated September 30, 1981, Special Term (GURAHIAN, J.), *inter alia,* denied defendant's cross motion, holding in part that the "subject complaint [met] the requirements of particularity under CPLR rule [3016]."[1] It is from this order that defendant appeals.

Initially, we observe that the prior order of Special Term from which no appeal was taken constitutes no impedi-

---

1. CPLR 3016, which delineates special pleading requirements in certain actions, provides in pertinent part: "(a) Libel or slander. In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally."

ment to review by this court. It is well established that "[t]he doctrine of the law of the case does not apply in an appellate court where the prior order was made by a court of subordinate jurisdiction from which no appeal was taken (*Di Fresco v Starin*, 81 AD2d 629, 630; see *Klein v Smigel*, 44 AD2d 248, affd 36 NY2d 809; see, also, *Martin v City of Cohoes*, 37 NY2d 162, on remand 50 AD2d 1035, app dsmd and mot for lv to app den 39 NY2d 740; 10 Carmody-Wait 2d, NY Prac, § 70:406). Insofar as the prior order determined that this libel action was based upon defendant's statements to the complaining tenants, it was erroneous. Such a claim is not contained in the complaint; rather, it is plaintiff's contention that defendant "composed and published" and is the author, both as to content and form, of the actual statements of complaint filed by the 10 Park Knoll tenants with the division. In accordance with the procedural law of this State (see CPLR 3016, subd [a]), the alleged defamatory words are quoted verbatim in the complaint. The action sounds in libel even as to those forms not designated as having been prepared by defendant, but which were allegedly written by the tenant as a result of defendant's conduct. Where a defamatory statement is oral, but is expected by the speaker to be reduced to writing and published, and is subsequently communicated in written form, such statement constitutes a libel (Sack, Libel, Slander, and Related Problems, § II.3, p 44 [hereinafter cited as Sack]).

Public policy considerations require that certain defamatory communications are either absolutely or qualifiedly (conditionally) privileged (see Sack, § VI.1, p 267 *et seq.;* Prosser, Torts [4th ed], § 114; Restatement, Torts 2d, § 583 *et seq.;* see, also, 50 Am Jur 2d, Libel and Slander, § 192). "The difference between the two rests in the role of malice. A qualified privilege is * * * available only in the absence of malice, while an absolute privilege, a veritable immunity, is impervious to proof, and therefore to a charge, of malice (*Andrews v Gardiner*, 224 NY 440, 446)" (*Stukuls v State of New York*, 42 NY2d 272, 275). Indeed, while generally the defense of privilege must be pleaded in an answer, where communications are absolutely privileged,

such defense need not be interposed (5 Carmody-Wait 2d, NY Prac, § 30:67).

The threshold question is whether, for the purposes of this analysis, the statements of complaint are subject to a privilege and, if so, whether it is an absolute or qualified privilege. The former, founded upon public policy considerations favoring free expression, affords the communicant total immunity from suit based upon his particular position or status. The latter, a " 'defeasible' " privilege (Prosser, Torts [4th ed], § 115), is characterized by a duty on the part of the communicant to make the defamatory statement at the time he did, or by the fact that the communicant has a legitimate interest in doing so on that particular occasion (Sack, §§ VI.1-VI.2, pp 267-268; Restatement, Torts 2d, § 584), and is based upon a public policy "that recognizes that it is desirable that true information be given [when] * * * reasonably necessary [to protect the] actor's own interests the interests of a third person or certain interests of the public" (Restatement, Torts 2d, § 584, p 243).

In our State, a grant of absolute immunity has been held applicable to statements made in the course of three types of proceedings, namely, legislative, executive and judicial (see *Toker v Pollak,* 44 NY2d 211, 219; see, also, Sack, § VI.2, p 268; 35 NY Jur, Libel and Slander, § 92; Hallerman, Defamation, Privilege, and the Public Interest: A Study in Priorities, 45 Bklyn L Rev 131, 139-140). However, because a grant of absolute privilege is founded upon public policy considerations and results in complete immunity from suit, the courts have been reluctant to extend its shield to cases where its application is not required by the policy considerations which engendered the privilege (see *Stukuls v State of New York,* 42 NY2d 272, 277, *supra; Andrews v Gardiner,* 224 NY 440, 446-447, 448, *supra;* cf. *Laun v Union Elec. Co. of Missouri,* 350 Mo 572, 578; cf. Ann., 45 ALR2d 1296, 1299).

Since at least the mid-19th century, the courts of this State have recognized that oral or written communications made in the course of a judicial proceeding are absolutely privileged and thus cannot serve as the basis for an action

sounding in defamation (*Garr v Selden,* 4 NY 91 [1850]). The rationale for this "judicial" immunity has been delineated thusly: "The interest of society requires that whenever men seek the aid of courts of justice, either to assert or to defend rights of person, property, [or] liberty, speech and writing therein must be untrammelled and free. The good of all must prevail over the incidental harm to the individual. So the law offers a shield to the one who in legal proceedings publishes a libel, not because it wishes to encourage libel, but because if men were afraid to set forth their rights in legal proceedings for fear of liability to libel suits, greater harm would result, in the suppression of the truth. The law gives to all who take part in judicial proceedings, judge, attorney, counsel, printer, witness, litigant, a *right* to speak and to write, subject only to one limitation, that what is said or written bears upon the subject of litigation" (1 Seelman, The Law of Libel and Slander in the State of New York [rev ed], par 191, p 233).

The judicial privilege also extends to communications made in the course of proceedings which may be characterized as quasi-judicial. Both the courts of this State and a number of our sister States have recognized that such absolute privilege attaches to communications made during certain administrative proceedings which, in substance, exhibit quasi-judicial attributes (see *Julien J. Studley, Inc. v Lefrak,* 50 AD2d 162, 165, affd insofar as appealed from 41 NY2d 881, *supra*).[2]

---

**2.** See, e.g., *Wiener v Weintraub,* 22 NY2d 330 (complaints to Bar Association Grievance Committee); *Marino v Wallace,* 65 AD2d 946 (remarks made during Public Service Commission hearing); *Julien J. Studley, Inc. v Lefrak,* 50 AD2d 162, affd insofar as appealed from 41 NY2d 881 (affidavit in support of a complaint in a real estate broker license revocation proceeding); *Kitchner v State of New York,* 82 Misc 2d 858 (unemployment benefit insurance proceeding); *Cooke v Manhattan Galleries,* NYLJ, July 29, 1976, p 5, col 2, mod on other grounds 48 AD2d 793 (complaint to Department of Consumer Affairs); but see *Kadish v Dressner,* 86 AD2d 622 (conditional privilege only); *Rainier's Dairies v Raritan Val. Farms,* 19 NJ 552 (petitioner filed with director of milk industry alleging illegal purchase agreement and requesting formal revocation hearing); *Parker v Kirkland,* 298 Ill App 340 (statements made before board of appeals during proceeding seeking review of capital stock assessment); *Robertson v Industrial Ins. Co.,* 75 So 2d 198 [Fla] (statements in application for revocation of insurance agent's license); *Fenning v S. G. Holding Corp.,* 47 NJ Super 110 (landlord's letter responding to tenant's protest permissively filed with rent control agency); cf. *Longo v Tauriello,* 201 Misc 35 (landlord's papers in connection with application to subdivide tenant's apartment made to Temporary State Housing Rent Commission); see, generally, Libel and slander: privilege

Although there is no clear definition as to what constitutes a quasi-judicial proceeding in which any communications "that may possibly be pertinent" (*Andrews v Gardiner,* 224 NY 440, 445, *supra; Karelas v Baldwin,* 237 App Div 265) would be afforded an absolute privilege (Prosser, Torts [4th ed], § 114, pp 779-780), certain criteria are readily apparent. For instance, the privilege does not apply to participants in proceedings "which, though official and public, are not in substance judicial" (*Andrews v Gardiner, supra,* pp 446-447).

The Court of Appeals, in discussing the nature of those proceedings in which administrative bodies have exercised a quasi-judicial function, has stated: "In each of these proceedings, as well as others held to be quasi-judicial (see, generally, Defamation — Administrative Proceeding, Ann., 45 ALR2d 1296; 50 Am Jur 2d, Libel and Slander, § 234), the administrative body exercised a quasi-judicial function. A hearing was held at which both parties were entitled to participate. The administrative body was empowered, based upon its findings, to take remedial action, whether it be an award of compensation, disbarment, or revocation of a license" (*Toker v Pollak,* 44 NY2d 211, 222, *supra*).

The shield of absolute immunity extends to the proceedings of administrative agencies where such proceedings are adversarial, result in a determination based upon the application of appropriate provisions in the law to the facts and which are susceptible to judicial review (see *Kitchner v State of New York,* 82 Misc 2d 858; cf. *Lipton v Friedman,* 2 Misc 2d 165). It attaches to "every step" thereof until final disposition (Prosser, Torts [4th ed], § 114, p 780), including situations in which "voluntary action by the citizen is a preliminary to a statutory proceeding" (1 Seelman, The Law of Libel and Slander in the State of New York [rev ed], 1968 Cumm Supp, p 126). Further, we note that in deciding whether the communications under review should be afforded an absolute privilege, our inquiry must not only consider the particular characteristics of the proceeding in

applicable to judicial proceedings as extending to administrative proceedings, Ann., 45 ALR2d 1296; 50 Am Jur 2d, Libel and Slander, §§ 234, 237; Sack, Libel, Slander, and Related Problems, § VI.2.4.2, pp 284-287.

which they were made, it must also focus upon the particular policy considerations attendant upon such grant (see *Julien J. Studley, Inc. v Lefrak,* 50 AD2d 162, 165, *supra*).

At bar, the alleged defamatory statements are written upon complaint forms provided by the New York State Division of Housing and Community Renewal, an administrative agency with both adjudicative and rule-making powers, and filed with the Office of Rent Administration, the body designated by the commissioner of the division to administer the ETPA (see 9 NYCRR 2500.1, 2500.3 [b] [2]).

The ETPA authorizes municipalities in Nassau, Rockland and Westchester Counties to declare a housing emergency where the rental vacancy rate in certain accommodations falls below 5% and in such event, to create rent guideline boards which shall establish guideline rates for rental adjustments (see ETPA, §§ 3, 4; 9 NYCRR 2500.8). The division is empowered to consider landlord applications for rental increases based, *inter alia,* upon submission of an application with the necessary evidence demonstrating a major capital improvement, substantial rehabilitation or hardship (9 NYCRR 2502.4). Should a tenant be of the view that he or she is being charged in excess of the legal regulated rent, he or she may file a complaint with the division. Where a landlord is found by the division, after a reasonable opportunity to be heard, to have collected rent in excess of the regulated rate, the division may assess penalties which may amount to three times the sum of the overcharge for a period not to exceed two years from the date of the complaint, unless the landlord establishes that such overcharge was not willful or attributable to his negligence, in which event the penalty shall constitute the amount of the overcharge. Attorneys' fees and other reasonable costs may be assessed against the landlord (see 9 NYCRR 2506.1).

A proceeding is initiated before the division by either the landlord or the tenant upon an application for an adjustment or other relief, which application shall be verified or certified by the applicant. The division may also institute a proceeding upon its own initiative (9 NYCRR 2507.1, 2507.2). Notice of such proceeding to the parties affected is mandated (9 NYCRR 2507.3). The regulations provide a

time limit for interposition of an answer (9 NYCRR 2507.4). At any stage of a proceeding, the division may, *inter alia,* conduct an investigation, require any person to appear or produce documents, or both, pursuant to a subpoena issued by the division, and grant or order a hearing (9 NYCRR 2507.5). In addition to its subpoena and oath-administering powers, the division may designate officers to hear and report (9 NYCRR 2506.4), and may commence proceedings in the Supreme Court to enjoin violations of the ETPA or of an order issued pursuant thereto (9 NYCRR 2506.3). Section 2507.6 of the regulations provides that the division, "on such terms and conditions as it may determine", may dismiss, grant or deny an application in whole or part, or "[i]ssue an appropriate order in a proceeding instituted on its own initiative." It is required that all parties to a proceeding be forwarded a copy of any order issued by the division (9 NYCRR 2507.6). The division may modify or revoke its prior order upon application of either party, or upon its own initiative, prior to the commencement of a judicial review proceeding (9 NYCRR 2507.8). Additionally, upon expiration of the period within which a landlord may institute a proceeding pursuant to CPLR article 78, a tenant may file and enforce a division order awarding penalties in the same manner as a judgment (9 NYCRR 2506.1 [e]).

Adversarial and impartial in nature, proceedings before the division may result in a grant of tangible relief to those parties appearing before it. Based upon these factors, and mindful of society's interest in having tenants speak freely with regard to matters relating to the provisions of the ETPA, we conclude that the statements made in the tenants' complaints were made in the course of a quasi-judicial proceeding and therefore were absolutely privileged. Having thus concluded, the question becomes whether such immunity should extend to defendant, who, as tenant leader, was allegedly the author of the statements of complaint, and who, while not technically a party to the division proceedings initiated by the tenants' statements of complaint did have a substantial interest therein based upon her status as tenant representative, and the fact that six of the tenants requested that, in the event of a

hearing upon their complaints, she act as their representative with respect to certain matters.

Whether one who is not technically a party to a quasi-judicial proceeding, but who has caused a participant to communicate defamatory matter therein, and who is sued based upon such communication within the proceeding, may assert an absolute privilege has been said to "[turn] on the nature of the privilege as one which affords only the actor himself immunity from liability or as one which deprives the communication of the defamatory matter itself of its character as a tortious act. Whether the nature of the absolute privilege afforded to communications in judicial proceedings is of the former or the latter kind depends upon the reasons why the law of defamation permits the privilege, since, as a general proposition, it is a pure question of policy whether to extend a privilege, in any particular type of case, to the initiator of the agent's act" (Libel and slander: absolute privilege in respect of pleadings or other judicial matters as available to one who is neither a party, an attorney for a party, nor a witness, but who causes the inclusion of the defamatory matter, Ann., 144 ALR 633). A defendant's capacity to assert such immunity has been said to depend upon "a consideration of other applicable rules of law pertaining to defamation and, more important, whether there are any reasons of public policy justifying an extension of the rule of absolute immunity for * * * defamatory matter in pleadings to those who may have some kind of an interest in the pleadings and the proceedings they involve" (*Laun v Union Elec. Co. of Missouri*, 350 Mo 572, 580, *supra*).

We are persuaded that under the facts of this case, including defendant's particular status, that there are sound, significant, compelling and legitimate policy reasons why the absolute privilege should be extended to this particular defendant (but see *Laun v Union Elec. Co. of Missouri, supra*).

Our neighboring State New Jersey "recognizes that the immunity which attends judicial proceedings protects both counsel and other representatives who are employed to assist a party in the course of litigation. Middlesex Concrete Products and Excavating Corp. v. Carteret Industrial

Ass'n, 68 NJ Super 85" (*Petty v General Acc. Fire & Life Assur. Corp.*, 365 F2d 419, 421). In *Middlesex Concrete Prods. & Excavating Corp. v Carteret Ind. Assn.* (68 NJ Super 85, *supra*), it was held that the investigation, report, consultations, aid and advice given by defendant, a non-party expert engineer called in as a consultant in connection with pending litigation, and who thereafter appeared as a witness at trial, were part of a judicial proceeding and therefore within the absolute privilege afforded statements made within such proceedings. The court reasoned that were the defendant's statements, etc., not privileged, every expert who acted as a consultant with respect to proposed or actual litigation would be liable on the theory that, while his testimony was privileged, his preliminary conferences with, and reports to, his client were not. To afford defendant at bar an absolute privilege should she appear as a witness or be employed (albeit without compensation) as a tenant's representative at a hearing, but deny such privilege to those statements attributed to her where she acted as advisor and representative with respect to the initiation of a proceeding before the division, would render every tenant leader who acts in such capacity to tenants who may not be able to afford the services of legal counsel in the preparation of formal complaint statements, or adequately formulate them unassisted, susceptible to defamation actions for their representation and assistance at that most critical stage of a division proceeding — its initiation.

Assuming, as plaintiff alleges, that the complaints at issue were authored by defendant in her capacity as tenant representative we hold that they constituted a pertinent part of a quasi-judicial proceeding and were within the absolute immunity afforded statements made therein (cf. *Middlesex Concrete Prods. & Excavating Corp. v Carteret Ind. Assn., supra*).

The defendant, as president of Park Knoll Tenants Association, held a position consistent with that of many other concerned tenant association leaders throughout this State. Such persons are mostly unpaid, dedicated and energetic individuals who attempt to provide advice and disseminate information to tenants, who are sometimes of

advanced age or suffer handicaps such as language difficulties, or who may be generally unfamiliar with their rights and remedies, so as to provide some counterbalance against the seeming omnipotence of their landlords. To rule against extension of the absolute privilege to this defendant would undoubtedly have a chilling effect upon any tenant representative whose counsel has been sought to assist a tenant in composing a formal complaint against a landlord. Pivotal to our determination to extend the rule of absolute privilege to this defendant today, is our recognition of the Legislature's finding, in enacting the ETPA, that: "there continues to exist in many areas of the state an acute shortage of housing accommodations caused by continued high demand * * * that preventive action by the legislature continues to be imperative in order to prevent exaction of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health, safety and general welfare; that in order to prevent uncertainty, hardship and dislocation, the provisions of this act are necessary and designed to protect the public health, safety and general welfare; [and] that the transition from regulation to a normal market of free bargaining between landlord and tenant * * * must take place with due regard for [the presently existing public housing emergency]" (ETPA, § 2). Assuredly, it is in the public interest to encourage tenant leaders to freely and without reservation impart knowledge of practices violative of the ETPA to those whom they represent when counsel is sought with regard to a proceeding before the division. The effect, were such leaders susceptible to defamation actions based upon conduct such as that complained of, would be in many instances to inhibit and deter the filing of complaints to the detriment of those tenants possessed of legitimate grievances (cf. *Wiener v Weintraub,* 22 NY2d 330).

Accordingly, for the reasons stated, defendant's cross motion should be granted to the extent of dismissing the complaint on the ground that it fails to state a cause of action. We therefore do not reach defendant's contentions regarding that part of Special Term's order which denied so

much of defendant's cross motion as sought a protective order.

WEINSTEIN, J. P., O'CONNOR and THOMPSON, JJ., concur.

Order of the Supreme Court, Westchester County, dated September 30, 1981, reversed, on the law, with $50 costs and disbursements, and defendant's cross motion is granted to the extent that the complaint is dismissed for failure to state a cause of action. Plaintiff's motion is denied as academic.