OPINION OF THE COURT
Beatrice S. Burstein, J.
Defendants’ motion and cross motion for summary judgment raise the following issue: whether an allegedly libelous petition presented by a group of parents to their board of education and released to the press is protected by either an absolute or a qualified privilege.
Defendants Ajamion also seek leave to amend their answer to include the defense of privilege. Plaintiffs do not oppose this request. Leave to amend an answer shall be freely given, absent a showing of surprise or prejudice (Fahey v County of Ontario, 44 NY2d 934, 935). As plaintiff has not made such showing, defendants Ajamions’ request is granted.
Plaintiff, a tenured teacher in the Oyster Bay — East Norwich Central School District, alleges defendants maliciously, intentionally and with knowledge of falsity, pre *912 pared and distributed a libelous petition to members of the board of education, and to a reporter for the Oyster Bay Enterprise-Pilot, a newspaper, thereby causing damage to his reputation and standing, and possible loss of income. He seeks compensatory and punitive damages.
Plaintiff asserts that, following publication of the petition, he met with the superintendent of schools and others, to discuss the charges against him. At that time the allegations were found to be unsubstantiated and it was agreed that no formal action would be taken against him. However, he claims that despite this resolution, he was wrongfully excessed, less than two months later. He further claims that he was not rehired as he should have been, when new openings arose.
In response, the defendants (parents and one brother of children then attending school in the district) assert, without contradiction, that after seeking assistance from school supervisory personnel, they were advised by a member of the board of education that the board would not consider their complaints about plaintiff unless they were set forth in writing. Defendants allege that it was as a result of this advice that the petition at issue here was prepared and filed with the board. Defendants relate a different version as to why no formal hearing was ever held upon their petition. However, for purposes of this determination, plaintiff’s recounting of the facts must be deemed accurate. (Karaduman v Newsday, Inc., 51 NY2d 531, 539.) Additionally, for present purposes, the court assumes the petition is defamatory, and treats the two publications (to the board and to the reporter) separately.
The petition states:
“To: Members of the School Board
“We, the undersigned, parents and voters in the E. Norwich Oyster Bay School District petition the school board for redress of our grievances.
“We are aggrieved in that we find the conduct and the performance of a teacher Steven Weisman unsatisfactory both in the classroom and in extracurricular affairs. This teacher
*913 “1. Has not been in class teaching during the times he is expected to be present.
“2. Has struck a student
“3. Has insulted various parents
“4. Has threatened bodily harm to a female parent
“5. Has publicly accused a student of being a liar and a thief without justification
“6. Has insulted a student using an ethnic slur, and otherwise engaged in incidents which we feel creates an unhealthy atmosphere for our children.
“We, as individual parents have brought incidents relating to our individual children to the attention of Dr. Shields, Dr. Toner, Mr. Ferrara and Mr. Berry and in some cases to Dr. Stevens. In each case the school authorities have chosen to have endless meetings with the involved parents, have not returned phone calls or to use a phrase * * * ‘we have been given the run around’. No action has been taken which in any manner has altered the behavior of this teacher * * * in no manner have his duties been changed or monitored.
“We are further aggrieved the [sic] the failure of the administration, considering the number of complaints, the length of time they have persisted and the number of students involved to take corrective action.
“In considering the seriousness of this petition members of the school board should take into account the natural reluctance of any parent to complain about a teacher, because of the ill effects it may have on the child. However, our patience has been exhausted. You will further realize that none of the incidents that have led to this petition are connected to each other except for the single common element Steven Weisman.
“We petition the board to relieve Steven Weisman of all extra curricular activities and that his classroom performance be monitored on a frequent and continuing basis by other than the present immediate supervision to insure that he is in his classroom and teaching when he is expected to do so.
*914 “In view of the past run arounds that each of us has been subject to, we feel that we must request the board respond to our petition within a week.
“Failure on the part of the board to take prompt and effective measures to address our grievances will result in the efforts of the undersigned to convince as many voters as possible to frustrate the efforts of the school board at the polls.”
Public policy considerations require that certain defamatory communications be cloaked with an immunity, denominated “absolute privilege”. Such communications cannot form the basis for a cause of action. (Toker v Pollack, 44 NY2d 211, 218-219.) Other communications receive a lesser degree of protection, known as “qualified privilege”. This latter privilege negates any presumption of implied malice flowing from a defamatory statement, and places the burden on the plaintiff to prove actual malice in order to recover damages. (Supra, at p 219.) The determination of whether a defamatory statement is protected by either an absolute or a qualified privilege requires weighing, on the one hand society’s need for free disclosure without fear of civil suit, and, on the other hand, an individual’s right to recover for damage to his reputation, his means of earning a livelihood, etc.
In resolving these competing interests, the protection of absolute privilege has been afforded defamatory statements made during the course of judicial proceedings, because participants in a trial must be able to “ ‘speak with that free and open mind which the administration of justice demands.’ ” (Youmans v Smith, 153 NY 214, 223.) For the same reason, absolute privilege has been extended to communications made in the course of proceedings which may be characterized as quasi-judicial, including certain administrative proceedings. (Park Knoll Assoc. v Schmidt, 89 AD2d 164, 170.) The types of administrative agencies to which this concept has been applied in this State are varied. (See, e.g., Park Knoll Assoc. v Schmidt, supra [NY State Div of Housing & Community Renewal]; Campo v Rega, 79 AD2d 626 [Internal Affairs Div of Nassau County Police Dept]; Julien J. Studley, Inc. v Lefrak, 50 AD2d 162, affd on other grounds 41 NY2d 881 [NY Dept of State]; *915 Marino v Wallace, 65 AD2d 946 [Public Serv Comm]; Loudin v Mohawk Airlines, 44 Misc 2d 926, mod on other grounds 24 AD2d 447 [Civ Aeronautics Bd]; Hanzimanolis v City of New York, 88 Misc 2d 681 [Fein, J.] [NY City Police Dept]; Alagna v New York & Cuba Mail S. S. Co., 155 Misc 796 [Fed Radio Comm].)
Furthermore, one authority has stated that “when * * * voluntary action by [a], citizen is a preliminary to a statutory proceeding * * * the shield of absolute privilege protects.” (1 Seelman, Libel and Slander [rev ed], 1968 Cum Supp, par 195.) The courts of this State are in agreement on this point and have held the following to be absolutely privileged: complaint to grievance committee of a Bar Association (Wiener v Weintraub, 22 NY2d 330); “tenants’ statements of complaint”, drawn by defendant as scrivenor and/or advisor, and filed with the New York State Division of Housing and Community Renewal (Park Knoll Assoc. v Schmidt, supra); affidavit filed with Department of State in support of complaint against real estate brokers’ acts (Julien J. Studley, Inc. v Lefrak, supra)) petition to State Commissioner of Education seeking removal of school trustees (Morah v Steele, 157 App Div 109); letter of complaint to Federal Radio Commission regarding acts of commissioned radio operations (Alagna v New York & Cuba Mail S. S. Co., supra). Nonetheless, there are no reported decisions in this State dealing with parents’ petitions to a board of education. Accordingly, the court must now consider the particular characteristics of the proceeding involved here and the particular policy considerations attendant upon the granting of absolute immunity in these circumstances. (Park Knoll Assoc. v Schmidt, supra, at pp 174-175.)
The procedure for handling a complaint against a tenured teacher is set forth in section 3020-a of the Education Law. All charges made must be in writing. Upon receipt of such charges,.. the board of education must determine whether probable cause for the charges exists. If the board’s decision is in the affirmative, a hearing must be held, absent a waiver of this right by the teacher. The primary purpose of such a hearing is to determine the fitness of the teacher against whom charges have been *916 promulgated. (Matter of Bott v Board of Educ., 41 NY2d 265, 268.) In fact, such a hearing is the exclusive method for dismissal of a tenured teacher. (Matter of Lynch v Nyquist, 34 NY2d 588.) Notice to the teacher and the board of education is mandated by the above-mentioned statute. At the hearing the teacher has the right to be heard; each party has the right to be represented by counsel, and to subpoena and cross-examine witnesses. The hearing, held under oath, is conducted by a panel of persons with expertise, whose names are selected from a State-wide list, and a stenographic record of the hearing is made. The panel may recommend a reprimand, a fine, suspension without pay, or dismissal. Either party possesses the right to appeal the hearing panel’s findings to the Commissioner of Education or by special proceeding pursuant to CPLR article 78. Thus, the proceeding mandated by the statute is adversarial in nature and presumably impartial. The prescribed procedure and the right to judicial review make it clear that such hearings are quasi-judicial in nature.
The policy considerations attendant in such circumstances all point to a strong need to keep lines of communication open. Absent special circumstances not relevant here, all parents are required by law to send their children to school. (See Education Law, § 3205, subd 1, par a.) Teachers, who act in loco parentis (Hoose v Drumm, 281 NY 54, 57-58; People v Jackson, 65 Misc 2d 909, 912 [App Term, 1st Dept]) have great power to affect the lives of the many children with whom they have contact for a major part of the day. The children, being considerably younger and less sophisticated, may not be intellectually capable of protecting themselves from unjust, unreasonable, or improper treatment; they may be afraid to do so; or they may not even recognize such treatment (e.g., children left in an unattended classroom may consider the occasion an opportunity for a romp). A teacher’s failure in such circumstances may result in findings of liability against the school district, the cost of which will ultimately be borne by its taxpayers.
Further, parents may be loath to complain for fear that speaking out will result in reprisals against their child. Oral complaints to supervisory personnel may not even be *917 effective. “The reluctance of administrators to act vigorously * * * has long been the bane of government institutions.” (Kilcoin v Wolansky, 75 AD2d 1, 11, affd 52 NY2d 995.) Additionally, as noted, supra, parents who wish to seek the assistance of the board are required by statute to put their complaints in writing. To tell lay persons that the governing body which has ultimate responsibility for the well-being of their children will not even hear their claim unless they publish a statement containing their complaint, and then subject these parents to liability for making the statement is counterproductive.
Protecting the well-being of its young people and providing them with a proper education are two of society’s greatest priorities. Because of this, a teacher’s alleged mistreatment of a student, during the course of the teacher’s performance of his duties as a public employee, is a matter of significant public concern (cf. Chapadeau v Utica Observer-Dispatch, 38 NY2d 196), rather than just a parent-teacher issue. It is for these reasons, not to protect parents as a group, that the lines of communication between parents and school authorities must be kept free and open. Ever mindful that “[t]he threat of being put to the defense of a lawsuit * * * may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself” (Washington Post Co. v Keogh, 365 F2d 965, 968), this court holds that defendants’ petition to the board of education is absolutely privileged.
The courts of California have reached the same conclusion. So holding, the court in Brody v Montalbano (87 Cal App 3d 725), relied upon the fact that the parents’ communications were intended to prompt official action, and had a logical connection to any resultant proceeding. In reaching its conclusion, the court placed emphasis on the importance of providing utmost freedom of communication between citizens and those public authorities whose responsibility it is to investigate wrongdoings. These concerns are equally applicable here. (See, also, Martin v Kearney, 51 Cal App 3d 309 [holding parents’ letters to school principal questioning teacher’s fitness were absolutely privileged, as designed to prompt official action].)
*918 The fact that no proceeding was actually commenced in this case has no significance. If such a distinction were to be drawn, it would require lay persons who wished to petition their board of education to make an initial determination, or more likely, an initial guess, as to whether the board will find probable cause to commence a proceeding. If they were wrong, they would be subject to damages for libel. This would have a severe chilling effect upon any petition, virtually vitiating the salutary purpose upon which the privilege is posited. As defendants noted in their petition, just the act of bringing charges, standing alone, is fraught with grave concerns of retaliation, tending in itself to promote self-restraint. In view of society’s need to facilitate communication in these matters, more restraint should not be added.
Furthermore, the board might find that charges presented to it set forth probable cause warranting a hearing, but then determine, as a matter of policy, that another, more informal approach, could achieve an equally satisfactory result. Yet, if the privilege were to apply only if a hearing were held, this less formal action by the board would expose even petitioners who had a valid claim to liability for libel.
Finally, assuming the truth of plaintiff’s claim that he was wrongfully excessed from his position and should have been rehired, plaintiff has other avenues for relief. (See, e.g., Education Law, § 2510.)
The court now turns its attention to the defendants’ publication of the petition to the reporter for the local newspaper. Relying upon section 74 of the Civil Rights Law, defendants would have the court hold that this publication is also absolutely privileged. That cited statute provides, in pertinent part, that “[a] civil action cannot be maintained against any person * * * for the publication of a fair and true report of any * * * official proceeding”.
However, this protection is not without qualification. (See, e.g., Shiles v News Syndicate Co., 27 NY2d 9 [holding the privilege does not extend to the publication of reports of matrimonial proceedings].) In Williams v Williams (23 NY2d 592), the Court of Appeals held that the absolute *919 privilege afforded litigants in a lawsuit does not extend to parties who maliciously institute a proceeding alleging false and defamatory charges and then publicize them in the press.
In his complaint, plaintiff has set forth specific allegations which he asserts show defendants’ malice was the basis for the petition.
However, because this action is still in its early stages and discovery proceedings have not yet been conducted, there is simply not enough information available to the court. For example, the court has not been advised how the reporter came to be present at the time the petition was presented to the board of education. This may be relevant. (See Savage is Loose Co. v United Artists Theatre Circuit, 413 F Supp 555 [US DC SONY].) Accordingly, any determination of whether the rule enunciated in Williams applies in this case would be - premature, as all parties are entitled to the opportunity to develop facts to support their contentions in this regard. Therefore, the court will not at this time rule with respect to whether the publication to the reporter was absolutely privileged.
Defendants also contend that this publication was at least protected by a qualified privilege. A qualified privilege arises when a person makes a bona fide communication upon a subject in which he has an interest, or in connection with which he has a legal, moral or social duty to speak, and the communication is made to a person having a corresponding interest or duty. (Shapiro v Health Ins. Plan of Greater N.Y., 7 NY2d 56.) Defendants, as movants on a motion for summary judgment, bore the burden of showing that to be the case here.
Yet, there has been no showing that the newspaper reporter had an interest or duty corresponding to that of defendants, or that any mutuality of interest in the subject matter of the statement existed. Merely providing a copy of a defamatory statement to the press does not give rise to any privilege. (See Dattner v Pokoik, 81 AD2d 572.) However, as noted supra, full disclosure has not been had. Accordingly, a ruling on this issue as a matter of law would also be premature.
*920 For these reasons, defendants’ motion and cross motion seeking dismissal of this action on the ground of absolute or qualified privilege are disposed of as follows. So much of the complaint as is based upon publication to the board of education is dismissed, on the ground this publication was absolutely privileged. In all other respects, the motion and cross motion are denied.