OPINION OF THE COURT
Herman Cahn, J.
This motion raises the issue of whether statements made in the course of a Medicare overcharge hearing mandated by and conducted pursuant to Social Security Act, title 18, part B are to be afforded the same absolute privilege accorded statements made during the course of judicial proceedings. The court concludes that under Federal law applicable herein, such statements are absolutely privileged and therefore grants defendant’s motion to dismiss the complaint.
The complaint asserts a cause of action for defamation and punitive damages. It alleges that plaintiff was slandered by words uttered by Myron Segal, M.D., on October 7, 1982.
Plaintiff Rasheed U. Jafar, M.D., is a licensed physician. Defendant Blue Cross Blue Shield of Greater New York (Blue Cross Blue Shield) is a New York corporation authorized to carry on the business of health insurance and was the Medicare carrier for the area in which plaintiff practiced. Defen *585 dant Myron Segal, M.D. (Segal), is a licensed physician who, on October 7, 1982, was Blue Cross Blue Shield’s assistant medical director.
On October 7, 1982, a hearing was conducted, concerning certain medical charges with respect to which Blue Cross Blue Shield had alleged overpayment to plaintiff for Medicare services which he had provided. Present at that hearing was plaintiff, Segal, Blue Cross Blue Shield (represented by Segal as its assistant medical director and by Bessie Lamar of its Utilization Review Department) and William Woodson, the hearing officer. The entire proceeding was tape recorded. During the course of the proceedings certain derogatory statements about plaintiff were made by defendant Segal. Plaintiff bases his defamation action on those statements. Since this motion is basically one made to dismiss for failure to state a cause of action (although denominated a motion for summary judgment), the court will assume the truth of the complaint’s factual allegations for the purpose of this decision.
Defendants seek dismissal of the complaint, claiming that any statements made during the course of the proceeding were absolutely privileged. If those statements were absolutely privileged, they cannot serve as the basis for the imposition of liability. (Toker v Pollak, 44 NY2d 211; Shenkman v O’Malley, 2 AD2d 567.)
Plaintiff contends that no such privilege exists here. He also contends that even if there were an absolute privilege generally for statements made during the hearing, the privilege applies only to statements reasonably related to the subject of the proceeding, and that Segal’s statements were too far afield to be afforded that protection.
The privilege is an ancient one, and is very broad (Stukuls v State of New York, 42 NY2d 272); it now also applies in judicial proceedings. The only limitation on the right to speak during a proceeding covered by the privilege is that what is said must bear upon the subject of the litigation. (1 Seelman, Libel and Slander in the State of New York ¶ 191 [rev ed].)
The absolute privilege has been extended to communications made in the course of "quasi-judicial” proceedings before administrative agencies. (See, e.g., Wiener v Weintraub, 22 NY2d 330; Marino v Wallace, 65 AD2d 946; Julien J. Studley, Inc. v Lefrak, 50 AD2d 162; Lipton v Friedman, 2 Misc 2d 165; Kitchner v State of New York, 82 Misc 2d 858; Mock v Chicago, Rock Is. & Pac. R. R. Co., 454 F2d 131.)
*586 Defendant contends that the hearing at which Segal’s allegedly defamatory statements were made was such a quasi-judicial administrative hearing, thus cloaking the statements with immunity.
Although the proceeding took place in this State, it is one that related to rights given by the Federal statutes. The court must thus determine whether New York law and Federal law on this issue (of whether the statements at this hearing qualify for absolute immunity) are the same. If they are not, the court must then decide which law to apply here.
The New York courts as well as the Federal courts have outlined the characteristics of a quasi-judicial administrative proceeding such as would qualify for an absolute privilege. (See, e.g., Mock v Chicago, Rock Is. & Pac. R. R. Co., supra; Toker v Poliak, supra; Park Knoll Assoc. v Schmidt, 89 AD2d 164; Kitchner v State of New York, supra.) The Court of Appeals outlined some of those characteristics in Toker v Poliak (supra): The administrative body holds a hearing in which both sides are permitted to participate, and the administrative body is empowered to take remedial action. (Toker v Pollak, supra.)
Elsewhere the law in New York was stated as follows: "The shield of absolute immunity extends to the proceedings of administrative agencies where such proceedings are adversarial, result in a determination based upon the application of appropriate provisions in the law to the facts and which are susceptible to judicial review”. (Park Knoll Assoc. v Schmidt, 89 AD2d, at p 171; see also, Kitchner v State of New York, supra.)
This latter articulation of the law focuses on a factor not discussed by the Federal cases, the availability of judicial review. The absence of this factor may serve to distinguish the Federal law in this area from that of New York.
Under the Federal law, the focus in making the determination is merely whether, "[T]he function of the administrative body * * * involves the exercise of * * * legal principles to varying factual situations and requires notice and hearing”. (Mock v Chicago, Rock Is. & Pac. R. R. Co., supra, at p 134; see also, United States v Kearns, 115 F2d 552.) Under the Federal law, reviewability of the determination is not one of the factors to be considered.
A brief overview of the nature of the subject hearing at which Segal’s allegedly defamatory statements were made is *587 in order. Social Security Act title 18 (79 US Stat 291 as amended, 42 USC § 1395 et seq.) is commonly known as the Medicare program. It is administered by the Secretary of Health and Human Services. It has two parts. Part A provides insurance against the cost of institutional health services, such as hospital and nursing home fees. Part B, with which we are concerned here, covers supplementary benefits, primarily physicians’ services. (Drennan v Harris, 606 F2d 846.) In order to facilitate the administration of the program, Congress authorized the Secretary of Health and Human Services to contract with private insurance carriers to administer payment of part B claims. (42 USC § 1395u.)
The Secretary pays the carrier’s administrative costs, and the provider’s claims (42 USC § 1395u [c]) and the carrier in return acts as the Secretary’s agent. (See, 42 CFR 421.5 [b]; Schweiker v McClure, 456 US 188.) The carrier reviews and pays part B claims in accordance with the procedures set forth in 42 CFR part 405, subpart H. Should the carrier refuse to pay any or all of the claim, the claimant is afforded an opportunity to appeal. The claimant is entitled to a review determination in which he may submit written evidence as well as legal and factual arguments. This review is performed by a carrier employee other than the one who made the initial determination. If, at this review, a claimant remains dissatisfied (and the disputed amount is over $100) he then has a right to an oral hearing. (42 USC § 1395u [b] [3] [C]; 42 CFR 405.820-405.860.) This hearing is presided over by an officer chosen by the carrier. The officer receives evidence and hears arguments (42 CFR 405.830) and renders written decisions based on the record (42 CFR 405.834). There are no provisions in the statute or regulations for further review of the hearing officer’s decisions. (See, United States v Erika, Inc., 456 US 201.) The absence of any such provisions has been deemed a congressional expression of its intent to preclude such review. (Supra.)
42 CFR 405.830 sets forth the procedures for conducting the oral hearing, to be held before an officer of the carrier. Segal’s statements were made at such a hearing. The hearings are open to the parties and any others deemed necessary by the hearing officer. The hearing officer receives testimony and documentary evidence, and the order and manner of the hearing is at the officer’s discretion. Evidence need not be admissible in court to be admissible at the hearing.
With the framework of the Medicare hearing regulations *588 and procedures in mind, a choice of law determination must be made. The Medicare program in general is a creature of Federal legislation. The issues arising therefrom present overriding Federal policy considerations. (Mock v Chicago, Rock Is. & Pac. R. R. Co., supra.) The privilege claim must therefore be judged by Federal standards.
Under Federal law, the proceeding was quasi-judicial in nature. The United States Supreme Court has stated that the hearing officer in such a proceeding acts in a quasi-judicial capacity similar to that of an administrative law judge. (Schweiker v McClure, supra.) Even absent this statement, it is clear that under the Federal standards articulated earlier herein, the proceeding would be deemed quasi-judicial.
The insurance carrier, in holding the hearing pursuant to congressional direction, serves as an agent of the Secretary of Health and Human Services and may thus be said to function as an administrative body. (Schweiker v McClure, supra.) The proceedings being that of a quasi-judicial administrative body under Federal law, there is an absolute privilege.
Having determined that the proceeding was that of a quasi-judicial administrative body, one issue remains. Even where there is an absolute privilege (under either New York or Federal law), it applies only where the statements made are pertinent to the subject of the proceeding. (See, Andrews v Gardiner, 224 NY 440; Martirano v Frost, 31 AD2d 931; Mock v Chicago, Rock Is. & Pac. R. R. Co., supra.)
Plaintiff argues that the statements made were not pertinent. "Pertinent” has been liberally construed to include any statement that may possibly be or become material or pertinent. (Dachowitz v Kranis, 61 AD2d 783; Andrews v Gardiner, supra, at p 441; see also, Mock v Chicago, Rock Is. & Pac. R. R. Co., supra; Seltzer v Fields, 20 AD2d 60.)
As then Appellate Division Justice Breitel stated in Seltzer v Fields (supra, p 62), "At least for the law of defamation, therefore * * * the possibly pertinent need be neither relevant nor material to the threshold degree required in other areas of the law. It is enough if the offending statement may possibly bear on the issues in litigation now or at some future time. Presumably there is some residual test of rationality, but it would seem that the barest rationality, divorced from any palpable or pragmatic degree or probability, suffices.”
The statements made by Segal are inexcusable. They show an apparent bias and attitude which is the opposite of the *589 rational judgment which one would expect from one in his position. However, in the circumstances in which they were made, they are not actionable. The basic statements made by Segal accuse plaintiff of dishonesty, of lack of proper medical training and knowledge, and of acting in a way which lowers the public view of his profession. Those statements, judged by the liberal standards of the law of defamation, may well be pertinent to the administrative hearing, which was concerned with whether or not plaintiff had overcharged for his services. The national slurs and other rantings although extremely unpleasant do not give rise to an action for defamation.
It cannot be said that, "[T]here was no way in which the words could under any circumstances * * * have been material or pertinent”. (Martirano v Frost, supra, at p 932.) The statements here may well have been pertinent and defendants did not lose their immunity when Segal made them.
Since the allegedly defamatory statements were, under controlling Federal law, made during the course of quasi-judicial, administrative proceedings, they were cloaked with an absolute privilege. Pertaining as they did, to the subject matter of the proceeding, they were not stripped of that protection.
The motion for summary judgment dismissing the complaint is granted.