RUCKER, Justice,
concurring in result.
I concur in the result reached by the majority. I write separately to explore a point of departure.
Public policy considerations require that certain defamatory communications be cloaked with an immunity, denominated as an “absolute privilege.” Such communications cannot form the basis for a cause of action. Rather, an absolute privilege bars an action for defamation even when the information was false and maliciously and knowingly published. Hoffman v. Roberto, 578 N.E.2d 701, 710 (Ind.Ct.App.1991). Other communications receive a lesser degree of protection, known as a “qualified privilege.” This latter privilege protects communication made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he or she has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty. Schrader v. Eli Lilly & Co., 689 N.E.2d 258, 262 (Ind.1994).
Whether a defamatory communication is protected by either an absolute or a qualified privilege requires weighing the need for free disclosure without fear of civil suit against an individual’s right to recover for such factors as damage to his reputation or his means of earning a livelihood. Weissman v. Mogol, 118 Misc.2d 911, 462 N.Y.S.2d 383, 385-86 (N.Y.Sup.Ct.1983). In resolving these competing interests, the protection of an absolute privilege has been afforded to defamatory statements made during the course of judicial proceedings.[1] And that is so because “[pjublic interest in the freedom of expression by participants in judicial proceedings, uninhibited by the risk of resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy when he has been wronged.” Van Eaton v. Fink, 697 N.E.2d 490, 494 (Ind. Ct.App.1998) (citation omitted). For the same reason, an absolute privilege has been extended to communications made in the course of proceedings, which may be characterized as quasi-judicial, including certain administrative proceedings. See, e.g., Keeton, supra § 114, at 818-19. “Absolute immunity has been confined to a very few situations where there is an obvious policy in favor of permitting complete freedom of expres *780 sion, without any inquiry as’ to the defendant’s motives.” Id. at 816-.
A central question presented by this case is what is it about the university’s procedure for addressing complaints of harassment that makes the procedure quasi-judicial in nature. Although acknowledging that the university’s processes lack a certain formality sometimes associated with quasi-judicial proceedings, the majority does not really answer this question. Instead it says, “[T]o the extent Keri has a complaint about the adequacy or fullness of the process, it is a complaint with Purdue, not Hartman and Swinehart.” Op. at 777. I cannot fully subscribe to this view. It is of course the case that Keri may have a separate cause of action against the university concerning its anti-harassment policy and procedure. But that is a wholly separate matter from an inquiry into whether the alleged defamatory communication the students made to the university is entitled to an absolute privilege or only a qualified privilege. That determination is dependent on whether the proceeding under which the university operated was indeed quasi-judicial. Only if the proceeding was quasi-judicial is the communication absolutely privileged and thus cannot form the basis for a cause of action.
Keri complains that the procedure under which Purdue acted did not allow counsel to appear and cross-examine witnesses or provide an opportunity to subpoena witnesses. According to Keri the “proceeding is ostensibly non-judicial. There was no formal hearing during the fact finding process. The process was non-adversarial.” Pet. to Trans, at 8. In essence Keri’s argument is that these safeguards are part and parcel of what it means for a body to act in a quasi-judicial capacity.
My research reveals no ironclad rule for determining what factors indicate that a body is serving in a quasi-judicial capacity. As Keeton notes,
The judicial proceeding to which [absolute] immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes, for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial, or quasi-judicial, in character.
Keeton, supra, § 114 at 818-19 (citations and internal quotations omitted).
In some jurisdictions the application of the absolute privilege in administrative proceedings turns in large part on only two factors: “(1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements.” Reiehardt v. Flynn, 374 Md. 361, 823 A.2d 566, 571 (2003). See also, Fisher v. Lint, 69 Mass.App.Ct. 360, 868 N.E.2d 161, 168 (2007). In other jurisdictions courts have identified at least six factors that assist in determining whether a proceeding is quasi-judicial in nature. Among them are whether the body has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and make decisions; (3) make binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of issues on a hearing; or (6) enforce decisions or impose penalties. See, e.g., Thomas v. Petrulis, 125 Ill. App.3d 415, 80 Ill.Dec. 713, 465 N.E.2d 1059, 1062 (1984); Gallegos v. Escalon, 993 S.W.2d 422, 425 (Tex.App.1999).
*781 This latter view is consistent with where this jurisdiction appears to come out on the subject of whether a body is acting in a quasi-judicial capacity.
While it is difficult, if not impossible, to define quasi-judicial power and to discriminate between judicial and administrative acts in a way which will be applicable to every case, we find it is the nature, quality, and purpose of the act performed, rather than the name or character of the officer or board which performs it, which determines its character as judicial. Generally, the judicial function consists of: (1) the presence of the parties upon notice; (2) the ascertainment of facts; (3) the determination of the issues; and, (4) the rendition of a judgment or final order regarding the parties’ rights, duties, or liabilities.
Lincoln v. Bd. of Comm’rs of Tippecanoe County, 510 N.E.2d 716, 721 (Ind.Ct.App. 1987) (footnote omitted), abrogated on other grounds by McDillon v. N. Ind. Pub. Seru. Co., 841 N.E.2d 1148, 1152 (Ind. 2006). See also City of Mishawaka v. Stewart, 261 Ind. 670, 676, 310 N.E.2d 65, 68 (1974) (noting that the procedural safeguards in proceeding before quasi-judicial bodies “should be at the highest level that is workable under the circumstances”).
Notably absent from these various formulations is any requirement that a party be (1) represented by counsel;[2] (2) allowed to subpoena witnesses on his own behalf; or (3) allowed to cross-examine adverse witnesses. Although these certainly are critical features of the judicial process — indeed with constitutional implications — they are not necessarily features of a quasi-judicial proceeding.
In this case the facts are clear that the university’s administrative procedure for addressing complaints of harassment is quasi-judicial in nature. During the course of the proceedings the university had the authority to and did: (1) exercise judgment and discretion; (2) determine facts and make a decision; (3) make binding orders; (4) affect Keri’s property rights; (5) examine witnesses; and (6) enforce its decision. Accordingly the students’ communications made pursuant to that procedure are entitled to an absolute privilege.

. At least one treatise notes only six areas in which courts have recognized an absolute privilege: (1) "Judicial proceedings;” (2) “Legislative proceedings;” (3) "Executive communications;” (4) "Consent of the plaintiff;” (5) "Husband and wife;” and (6) "Political broadcasts.” W. Page Keeton et al., Pros-ser & Keeton on the Law of Torts § 114, at 816-24 (5th ed.1984).

. Indeed in Lake Central Sch. Corp. v. Scartozzi, 759 N.E.2d 1185, 1191 (Ind.Ct.App.2001), the Court of Appeals rejected a claim that a student’s due process rights were violated where the school prohibited student from having his attorney present during an expulsion meeting.